CENTRAL COAST CONSTRUCTION, a California Corporation, Appellant,

v.

LINCOLN–WAY CORPORATION and Ohio National Life Insurance Company, Appellees.

No. 9922.

United States Court of Appeals Tenth Circuit.

Dec. 13, 1968.

Walter C. Urbigkit, Jr., Cheyenne, Wyo. (McClintock, Mai & Urbigkit, Cheyenne, Wyo., on the briefs) for appellant.

Clarence A. Brimmer, Rawlins, Wyo., (Brimmer & MacPherson and John A. MacPherson, Rawlins, Wyo., on the brief), for appellees.

Before PHILLIPS, HILL and SETH, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

At all times here material, Central Coast Construction [1] was a corporation organized under the laws of California. Its officers, directors, and principal stockholders were John H. Cline, Jr., J. A. Zerkle and James W. Agee. Such individuals were also the principals in an architectural and engineering consulting firm.

Lincoln-Way Corporation [2] was organized on July 30, 1965, under the laws of Wyoming. Its incorporators were Malcolm R. Smith, John C. Ratliff, Charles V. Wortman and Cline.

Smith and Ratliff acquired a tract of land in Rawlins, Wyoming, that was suitable for use as a site for a motel. In October 1964, Wortman and Cline met at Coast Construction's offices in Berkeley, California, and discussed the construction of a motel on such site. Cline stated that Coast Construction was in a position to offer a "fully negotiated contract" for the construction of the motel and help with the financing. Smith and Wortman met with Cline in Berkeley on November 10, 1964, and entered into an interim agreement by which Coast Construction was to prepare plans and specifications for the motel and secure a loan commitment within 60 days.

---

1. Hereinafter called Coast Construction.

2. Hereinafter called Lincoln-Way.

It became apparent that the plan would fail for lack of financing, unless Lincoln-Way could arrange for a national motel affiliation. Thereafter, it arranged for an affiliation with Quality Courts, which necessitated a substantial revision of the plans and specifications. Early in the summer of 1965, the plans for a motel and restaurant building were revised by Coast Construction, so as to meet the requirements of Quality Courts.

Smith contacted Ohio National Life Insurance Company in September 1965 and obtained a preliminary commitment for a loan of $350,000. On September 17, 1965, Cline, in a letter to Smith, stated Coast Construction had determined a price of $440,000 for the construction of the motel and restaurant building under the revised plans. However, excluded therefrom were the site work and the laying of the asphalt paving, which were to be done by Lincoln-Way.

The first meeting of the incorporators of Lincoln-Way was held on November 17, 1965. Ten thousand shares of stock of the par value of $5 per share were issued. Pursuant to a previous agreement made in April 1965, Cline, Agee and Zerkle each subscribed for 500 shares of the stock, or a total of 1,500 shares of the par value of $7,500. It was determined to defer construction until 1966.

A firm commitment for a loan of $350,000 was obtained from Ohio National on December 20, 1965. It required that construction start on April 15, 1966, and be completed by November 16, 1966, subject to delays beyond the control of the builder. The starting date was defined as meaning the date of the beginning of excavation for footings. In February 1966, Smith and Ratliff met with Cline and asked him for a firm bid. Some minor changes were made in the plans and it was agreed that the cost of a performance bond should be included in the price. They agreed on a firm bid of $415,000.

On April 1, 1966, Cline forwarded to Lincoln-Way six copies of a form of construction contract. It provided that the contractor (Coast Construction) would furnish the labor and materials and do all the work to construct the motel and restaurant buildings, except for certain noted exclusions.[3] It provided that the work should be commenced within 10 days after the signing of the contract and be substantially completed within 110 working days thereafter; that the contract price would be $415,000; that the owner (Lincoln-Way) might from time to time add to or delete from the scope of the work; that the contract price should be changed accordingly; that no change should be made without a change order, made by the owner and approved by the contractor, and that the order should stipulate the change in the contract price and the time for completion by reason of such change. It provided that the specifications and drawings should be a part of the contract.

Along with the contract form Cline sent two letters, each dated April 1, 1966. One letter was a proposed supplement to the contract, with reference to certain allowance items.[4] It listed allowance items included in the contract price, aggregating $198,750, and set forth the items for which firm bids had been received and the items for which firm bids had not been received. It stated that "upon final bidding" on the allowance items "the final contract sum will be adjusted in the amount of the aggregate change in the total price for these items."

The other letter was a cover letter for the proposed supplemental contract letter and the contract form. It referred to certain changes, additions and deletions that had been made, and stated that the net effect of those would be to increase

3. It excluded the site work, rock excavations, if any, asphalt paving, furniture and furnishings, kitchen and bar equipment, and registration desk.

4. The term "allowance item" as used in this opinion, in the letter of April 1, 1966, and other correspondence, means items of labor and materials to be furnished and work to be done by subcontractors on bids yet to be made by them and accepted by the contractor.

the contract price $1,420. It stated that the performance bond would add $2,380 to the contract price,[5] and also stated that the mortgage securing the loan should be recorded before construction started and urged expedition of such recording.

Ohio National insisted on the insertion in the contract of a delay in completion clause, and a provision for liquidated damages for delay. Smith advised Cline of such requirement by Ohio National. Smith caused the contract to be redrafted, so as to provide that the work should commence within 10 days after the signing of the contract and be completed on or before October 15, 1966; that "time shall be of the essence" of the contract; that if all of the work "called for under the * * * contract is not completed by October 15, 1966, or by such other time to which the period of completion may be extended, * * * said contractor shall pay to the owner, as liquidated damages and not as penalty, Two Hundred Fifty and no/100 ($250.00) Dollars per day for each and every calendar day" that elapses after the time for completion has expired and before the contractor completes the work; and that the time for completion should be extended for any period of time the work is delayed by reason of circumstances beyond the control of the contractor.

The revised contract was dated April 15, 1966. It was duly executed for Lincoln-Way by Smith as its president and Wortman as its secretary. It was returned to Cline by Wortman, with a covering letter dated April 11, 1966, signed by him, which read:

"Enclosed are the original, duplicate and 4 copies of the executed contract. Please return the duplicate and 4 copies for distribution."

Such revised contract was duly executed for Coast Construction by Agee as its president and Cline as its assistant secretary.[6] Cline returned the duplicate and four copies to Lincoln-Way, together with a letter dated April 19, 1966, reading:

"I am returning the duplicate and four copies of the signed contract for subject job.

"It was my understanding that there were to be no liquidated damages in the contract. In order not to hold this up we are signing it as written, but we obviously cannot be responsible when it is beyond our control to get the job started.

"Also, the contract does not mention the allowance items which we certainly have to have a supplemental agreement on.

"I would appreciate it if you would acknowledge a copy of this letter by signature and return it for our file so that we are in complete accordance on the point that we will not be subject to the liquidated damage clause. Also, I think it would be in order to have you acknowledge our letter of April 1, 1966 which covered the allowance items."

It was signed "CENTRAL COAST CONSTRUCTION" by John H. Cline, Jr. Neither Lincoln-Way nor any of its officers ever acknowledged a copy of the letter of April 19, 1966, quoted above, by signature on a copy thereof, nor did they otherwise agree thereto, and they did not acknowledge nor in any way agree to Cline's letter of April 1, 1966, relative to allowance items. Lincoln-Way took the position that it had insisted on and received a firm bid and was required by Ohio National to have a provision in the contract for the payment of liquidated damages for delay by the contractor in completion of the work. The construction was completed on November 4, 1966.

The Contract of April 15 provided that the contractor (Coast Construction) should "perform this contract in a good and workmanlike manner and in conformity with the specifications."

---

5. One requirement of Ohio National was that a performance bond be given by Coast Construction.

6. Such revised contract, signed by both parties, will be hereinafter referred to as the "Contract of April 15."

Lincoln-Way filed an answer and counterclaims. We advert only to the allegations of the counterclaims here material.

In its Counterclaim No. 1, Lincoln-Way alleged that Coast Construction did not complete the work until 20 days after the expiration of the period for construction, and that Coast Construction was liable to Lincoln-Way for liquidated damages in the sum of $5,000.

In its Counterclaim No. 2, Lincoln-Way alleged that Coast Construction did not perform the work in accordance with the contract, plans, and specifications, to Lincoln-Way's damage in the amount of $50,000.

As a further defense, Lincoln-Way set up in its answer that it, the Title Guaranty Company of Wyoming, and the First National Bank of Rawlins, Wyoming, entered into an escrow agreement for the purpose of providing for the payment of any balances due Coast Construction and lien claimants and meeting the requirements of the Title Guaranty Company for issuance of a title insurance policy on the motel property.

Lincoln-Way attached a copy of the escrow agreement to the answer. It provided that Lincoln-Way would deposit $50,000 in cash or securities acceptable to Title Guaranty Company. Lincoln-Way further alleged: That on January 4, 1967, it made, executed and delivered to Coast Construction its promissory note for $20,000, bearing interest at 6½ per cent per annum, payable two years after the date; and that such note and capital stock in Lincoln-Way of the par value of $3,250, issued to Zerkle, Cline and Agee, sole officers, directors and stockholders of Coast Construction, and cash in the amount of $26,750, were delivered to the bank, as escrow agent, for the purpose of paying such claims. Lincoln-Way in-troduced evidence showing that Coast Construction accepted as partial payment of the balance due it under the contract such note and stock in Lincoln-Way, in accordance with previous agreements to that effect.

Lincoln-Way applied for a loan of $384,000, but was only able to obtain a loan for $350,000. As a result, Coast Construction agreed to help in financing the cost of construction. On April 1, 1965, Coast Construction offered by letter to take 15 per cent of the stock of Lincoln-Way. On September 17, 1965, Coast Construction offered to take a note for $20,000 from Lincoln-Way, preferably for one year, with interest at 6½ per cent per annum, in part payment of the last payment due it on the Contract of April 15. On November 10, 1966, Coast Construction orally renewed its offers to take the note and $3,750[7] in stock in Lincoln-Way. Lincoln-Way accepted such offer. That fact was confirmed in May 1967, when Cline stated to Smith, "Mr. Smith, you know we have a supplemental agreement in effect on this $20,000 note." It was not until January 31, 1967, that Coast Construction for the first time attempted to retract its offer or its agreement to accept the note and stock.

Smith, Ratliff and Wortman also substantially increased their stock subscriptions.

Coast Construction commenced construction work under the Contract of April 15 on April 26, 1966, and substantially completed it on November 4, 1966. Fourteen days elapsed after the time for completion had expired before Coast Construction completed the work.

Lincoln-Way paid Coast Construction $371,873.68, leaving a balance, without deducting Lincoln-Way's offsetting items, of $49,660.36.

---

7. The oral evidence, fully confirmed by letters from Coast Construction, clearly established that Coast Construction agreed to accept stock in Lincoln-Way of the par value of $3,750 and credit Lincoln-Way with that amount in the final settlement. However, the court found that Lincoln-Way only deposited $3,250 of stock with the escrow agent, and in the judgment only allowed credit to Lincoln-Way of that amount and ordered it to deliver only $3,250 of stock to Coast Construction.

The court found:

That on April 15, 1966, Coast Construction and Lincoln-Way executed a written construction contract, which provided that Coast Construction would construct a motel and restaurant building for $415,000; that Lincoln-Way ordered changes and extras of the reasonable value of $6,534.64, which increased the price of the buildings to $421,534.64; that Coast Construction failed to construct the building in accordance with the plans and specifications "with respect to plumbing, heating, painting, and work on the swimming-pool," and that Lincoln-Way would be required to expend $5,264 to complete such parts of the work in accordance with the plans and specifications and was entitled to an offset in that amount; and that Coast Construction commenced construction under the Contract of April 15, on April 26, 1966, and completed the work on November 4, 1966, which was 18 days after the contract period for completion had expired, and that Lincoln-Way was entitled to $4,500 as liquidated damages, which amount was offset against the amount due to Coast Construction.

The court further found that on January 4, 1967, Lincoln-Way delivered to the First National Bank of Rawlins, Wyoming, pursuant to the escrow agreement and for the purposes stated therein, $50,000 in cash and securities, comprising (1) a promissory note dated January 4, 1967, for the principal amount of $20,-000, executed by Lincoln-Way and payable to Coast Construction, (2) capital stock of Lincoln-Way of the par value of $3,250, issued to Zerkle, Cline and Agee, sole officers, directors and stockholders of Coast Construction, and (3) $26,750 in cash, and that Coast Construction accepted the note and stock on its final progress billing as partial payment for work done under the Contract of April 15.

The court further found that Coast Construction had substantially completed performance of the contract; that Lincoln-Way had paid Coast Construction $371,873.68, and after deducting the offsetting items, the $20,000 note, and the amount of the stock of Lincoln-Way, there was due Coast Construction from Lincoln-Way $16,646.96.

■ Although there were conflicts in the testimony, the evidence and the inferences reasonably deductible therefrom provided ample and substantial proof of the facts as we have stated them; and except as to the extensions of time for completion of the work to which Coast Construction was entitled, for any periods of time the work was delayed by circumstances beyond the control of Coast Construction and the amount of liquidated damages for the delays in completion due Lincoln-Way, they afforded substantial support for the findings of the trial court. With the noted exception, which we will consider more particularly, infra, such findings are not clearly erroneous and are, therefore, binding on this court.[8]

The trial court concluded:

That Coast Construction's letter of April 1, 1966, was a "mere offer" by Coast Construction "concerning allowance items" and was not accepted nor agreed to by Lincoln-Way and did not become a contract binding on the parties;

That Coast Construction's letter of April 19, 1966, did not "constitute a conditional acceptance" of the Contract of April 15, and did not alter nor otherwise qualify the terms of such contract;

And that Coast Construction's attempted retraction of the acceptance of the promissory note and stock as part payment of the amount due and owing it was a unilateral act and ineffective to relieve Coast Construction "from its prior acceptance."

Judgment was entered on December 21, 1967, in favor of Coast Construction against Lincoln-Way for $16,646.96, the amount due after crediting Lincoln-Way with the offset of $9,764.

The judgment also required that Lincoln-Way cause to be delivered the $20,-

8. Rudd Paint & Varnish Co. v. White, 10 Cir., 403 F.2d 289, 290.

000 note and the $3,250 of Lincoln-Way's stock due Coast Construction within 20 days after the date of judgment.

Coast Construction did not further revise the draft of the Contract of April 15, which had been revised by Lincoln-Way and sent to Coast Construction by Wortman, and tender it as a further modified offer to Lincoln-Way. Instead, it signed the original and duplicate copies of the contract, as revised by Lincoln-Way, retained the original, and forwarded the duplicate and four copies to Lincoln-Way, as requested by Wortman. When Coast Construction signed the revised contract and deposited the duplicate and four copies in the mail, addressed to Lincoln-Way, the Contract of April 15 went into full force and effect and became binding upon the parties thereto.

Cline's letter of April 19, 1966, to Smith was neither expressly nor impliedly a conditional acceptance of the contract, as redrafted by Lincoln-Way. It subdated the Contract of April 15 by four days, and in terms was a proposed supplemental contract, modifying the Contract of April 15, then in effect, and it requested Lincoln-Way to accept and agree to such proposed supplemental contract and evidence such acceptance by returning to Coast Construction a copy thereof signed by Lincoln-Way. Lincoln-Way did not accept nor agree to such proposed supplemental contract and it never went into force and effect.

The letter of April 19, 1966, also requested Lincoln-Way to manifest its acceptance and agreement to Coast Construction's proposal in its letter of April 1, 1966, to Lincoln-Way, stating that upon receipt of all the bids from the subcontractors on allowance items, the contractor would make available to the owner the results of the bidding and "the final contract sum will be adjusted in the amount of the aggregate change in the total price for these items." But

Lincoln-Way did not acknowledge the letter of April 1, 1966, nor in any other way accept or agree to the proposal therein, with respect to adjustment of the contract price. Nevertheless, Coast Construction elected to commence and carry on to substantial completion the work under the Contract of April 15, and at no time after the commencement of construction on April 26, 1966, did Coast Construction make any further efforts to obtain Lincoln-Way's acceptance of Coast Construction's proposals in the letters of April 1, and April 19, 1966.

It is, of course, settled contract law that a proposal by one party does not ripen into a contract, unless it is accepted by the other party.[9]

For the above reasons, we agree with the trial court that the proposals by Coast Construction in the letters of April 1 and April 19, 1966, were not accepted nor agreed to by Lincoln-Way and never altered or became a part of the Contract of April 15; and that the basic contract price was $415,000, which was increased by $6,534.64, because of changes and extras ordered by Lincoln-Way, so that the total contract price for the two buildings was $421,534.64.

The Contract of April 15 provided the work should commence 10 days after "the signing of" such contract and should be completed on or before October 15, 1966.

The contract recited that it was signed on April 15, 1966, and the parties have treated that as the date when the 10-day period began to run. Hence, the date for beginning construction was April 25, 1966.

The evidence shows the commencement of the work was delayed one day, due to the fact that the mortgage securing the loan was not recorded until April 25, 1966. Such delay entitled Coast Construction to a one-day extension for completion of the work, and not

9. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 138; True Oil Co. v. Gibson, Wyo., 392 P.2d 795, 798; Williams v. Favret, 5 Cir., 161 F.2d 822, 824; 1 Williston on Contracts, § 64 (3d ed. 1957); 1 Corbin on Contracts, § 55 (1963).

to the 11 days which Coast Construction claimed.

In Coast Construction's Exhibit 5, it claimed four days' delay was caused by bad weather. In its answer to an interrogatory, Lincoln-Way admitted Coast Construction was delayed four days by bad weather, and at the trial, Smith testified that Coast Construction was delayed four days, because of bad weather.

In their brief, counsel for Coast Construction claim they are entitled to four days' extension of time for completion, because of a delay caused by bad weather. For some inexplicable reason, the court allowed Coast Construction no extension of time for completion, because of delay caused by bad weather.

It is fairly apparent that one of the two days' extension of time for completion allowed Coast Construction by the court was for the delay caused by the fact that the mortgage was not recorded until April 25, 1966. The reason the court gave an extension for the other of the two days is not clear. However, it probably was because of the addition of the storeroom to the restaurant, since the evidence fairly refuted all of Coast Construction's other claims for extensions, except for the delay caused by four days of bad weather and the failure to record the mortgage until April 25, 1966.

We conclude the court clearly erred, no doubt inadvertently, in not allowing Coast Construction a four-day extension of time for completion because of delays caused by bad weather, and that otherwise its findings with respect to extensions of time for completion are supported by substantial evidence and are not clearly erroneous.

The remaining issues, as to whether there was an agreement between the parties that Coast Construction would accept as a credit on the final payment due it the note for $20,000 and $3,250 of Lincoln-Way stock; as to the failure of Coast Construction to conform to the plans and specifications as to certain items of the work, resulting in defects in the buildings; and as to the amount Lincoln-Way would have to expend to correct such defects and complete the work in accordance with the plans and specifications, all rest on issues of fact and present no questions of law, other than the sufficiency of the evidence to support Lincoln-Way's claims and the findings of the trial court. Since those issues were all resolved in favor of Lincoln-Way by the findings of the trial court, which are substantially supported by the evidence and are not clearly erroneous, they do not merit further discussion. The facts speak for themselves.

The judgment will be modified by increasing the amount awarded Coast Construction to $17,646.96, with interest from December 22, 1966, and, as modified, affirmed.