WYOMING SAWMILLS, INC., a Wyoming corporation, Appellant (Plaintiff/Third–Party Defendant),

v.

Robert B. MORRIS; Raymond McCoy, Gerald McCoy; and Gary McCoy, d/b/a J & D Wood Products; Sheridan National Bank, and Edith I. Morris, Appellees (Defendants/Third–Party Defendants/Third–Party Plaintiffs).

No. 88–3.

Supreme Court of Wyoming.

June 10, 1988.

Darlene L. Reiter of Burgess & Davis, Sheridan, for appellant.

Dan B. Riggs and Haultain E. Corbett of Lonabaugh & Riggs, Sheridan, for appellees Robert B. Morris, Edith I. Morris, Raymond McCoy, Gerald McCoy, and Gary McCoy d/b/a J & D Wood Products, and Sheridan Nat. Bank.

Robert W. Koester, Sheridan, for appellee Sheridan Nat. Bank.

Michael K. Davis, Sheridan, for appellees Raymond McCoy, Gerald McCoy, and Gary McCoy d/b/a J & D Wood Products.

Stuart S. Healy of Healy & Kinnaird, Sheridan, for appellees Robert B. Morris and Edith I. Morris.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and ROONEY, Retired Justice.

ROONEY, Retired Justice.

This appeal is from a judgment enforcing an oral settlement agreement.

We affirm.

Appellant words the issues on appeal:
"I. Was there an unconditional acceptance of the essential terms of the settlement offer sufficient to form a contract?
"II. Was there a meeting of the minds sufficient to form a contract?
"III. Did the settlement negotiations form a contract?
"IV. Does the order of the Court, which incorporates the terms of the settlement document, violate W.R.C.P., Rules 11 and 41?"

Appellees word them:
"I. Did the Trial Court have authority to enforce the terms of the Settlement Agreement between the parties?
"II. Was there sufficient evidence to support the Trial Court's finding that an agreement to settle the litigation existed between the parties?"

Appellant agreed to purchase from appellee Robert B. Morris approximately 230,000 board feet of green saw logs which were decked at a location known as U.S. Forest Service Little Willow Timber Sale. Thereafter, appellees McCoys claimed ownership of the logs and appellee Sheridan National Bank claimed a security interest in them. This litigation resulted from the several claims by the parties.

Since the first three issues presented by the appellant and the second issue presented by appellees are issues of fact, we must, as to these issues, examine the record to determine if there is evidence to support the findings of the trial court, and we do so in accordance with the following law.

We have often said that, on appeal, the Supreme Court assumes that evidence in favor of the successful party is true, leaves out of consideration entirely the conflicting evidence presented by the unsuccessful party, and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence. See e.g. *Hance v. Straatsma*, Wyo., 721 P.2d 575, 578 (1986); *Dehnert v. Arrow Sprinklers, Inc.*, Wyo., 705 P.2d 846, 851 (1985); *Scherling v. Kilgore*, Wyo., 599 P.2d 1352, 1359 (1979); *Madrid v. Norton*, Wyo., 596 P.2d 1108, 1117 (1979), and cases there cited with reference to this proposition.

The existence of a contract requires a meeting of the minds of the parties to it. *Jackson Hole Builders v. Piros*, Wyo., 654 P.2d 120 (1982); *Crockett v. Lowther*, Wyo., 549 P.2d 303 (1976). An unconditional, timely acceptance of an offer, properly communicated to the offeror, constitutes a meeting of the minds of the parties and establishes a contract. *Wheeler v. Woods*, Wyo., 723 P.2d 1224 (1986); *Schacht v. First Wyoming Bank, N.A.—Rawlins*, Wyo., 620 P.2d 561 (1980); *Madison v. Marlatt*, Wyo., 619 P.2d 708 (1980); *Crockett v. Lowther, supra; Trautwein v. Leavey*, Wyo., 472 P.2d 776 (1970); *Central Coast Construction v. Lincoln–Way Corporation*, 404 F.2d 1039 (10th Cir.1968).

Whether a contract has been entered into depends on the intent of the parties and is a question of fact, *United States Through Farmers Home Administration v. Redland*, Wyo., 695 P.2d 1031 (1985), and this is so with reference to oral contracts.

"Whether an oral contract exists, its terms and conditions and the intent of the parties are questions of fact. *Jim's*

*Water Service, Inc. v. Alinen,* Wyo., 608 P.2d 667 (1980)." *Richardson v. Green,* Wyo., 644 P.2d 778, 779 (1982).

Finally,

"An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as the written contract would be if it had been executed." *Robert W. Anderson House Wrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming,* Wyo., 681 P.2d 1326, 1331 (1984). "In general, the principle is well settled that where the parties to a contract intend that it shall be closed and consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, the parties will be bound by the contract actually made, although it be not reduced to writing; but, on the other hand, if the parties do not intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no complete contract until the agreement shall be put into writing and signed." *Summers v. Mutual Life Ins. Co.,* 12 Wyo. 369, 75 P. 937, 943 (1904).

■ The record reflects that, during the pleading and discovery stages of the case, all four parties engaged in settlement negotiations. Counsel for the parties met on September 10, 1987 to further discuss settlement. An understanding was reached on all items except one which involved a payment by appellant to appellees McCoys. Counsel for appellant stated that she had authority to pay $10,000 and counsel for appellees McCoys stated that he had authority to accept $12,000. Counsel for appellant suggested that each party contribute $500 from their respective positions in compromise of the difference. It was agreed that counsel would contact their clients and recommend acceptance of the suggestion.

Later, in a four-way telephone conversation, all counsel reported acceptance by their clients of the suggestion,[1] and it was agreed that they would meet the following day at 3:00 p.m. to execute the documents and close the transaction.

At 3:00 p.m. the next day, all parties and their counsel met as agreed except appellant and its counsel. Shortly after 3:00 p.m., appellant's counsel arrived and announced that her client would not be there and that "we don't have a deal."

Appellant's contention is that payment and execution of the settlement document "were conditions precedent to the settlement." Appellees contend that a binding oral agreement settling the litigation was entered into by all of the parties during the fourway telephone conference on September 10, 1987, and that payment thereunder and execution of the settlement document were no more than performance of the terms of the oral settlement agreement. The evidence of the prevailing parties presented at the hearing was sufficient to support the finding of the trial court that appellees' contention was correct.

In addition to the testimony set forth in note 1, supra, counsel for appellees Morrises testified in part:

"Q. And did you indicate to the other counsel that the five hundred dollar reduction would be acceptable with the Morrises?
"A. I did. I did not have a verbal commitment from my clients on that, but I felt I could get it, and I advised counsel that it was not a factor because if I could not get it, I had spent more time on settlement discussions than I had on the merits of the case, and I would make up the difference if it came to that.
"Q. And ultimately the Morrises approved the five hundred dollar reduction?
"A. Yes, they did. I talked to Bob Morris that evening and he approved it."

---

1. Stuart Healy, counsel for appellees Morrises, testified in part:
"Q. Mr. Healy, were you present as a party to a four-way telephone conversation among all counsel in this case on Friday, or on the 10th of September?
"A. I was part of that conversation. I was brought in on the latter part.
"Q. You were, in fact, the last one of the counsel who was brought in on that conversation, is that the case, sir?
"A. That's correct.
"Q. And did the other attorneys ask you if you had obtained the authority for the five hundred dollar reduction for your client?
"A. They asked.

"Q. Do you recall any discussion of the 10th, of the time effectuating the settlement?

"A. During the telephone and conversations previously, I distinctly remember Mike Davis [2] putting that on as a condition, as of the close of business of Friday, the 11th of September. He indicated to all of us that he would not instruct his clients to come down off of the mountain *until he was certain that we had a firm deal.*

"Q. Was Ms. Reiter [3] present when those statements were made by Mr. Davis?

"A. Yes, she was.

"Q. And what, if anything, was said during the telephone conversation, to which all of the parties were party, concerning the timing of the accord which had been reached?

"A. The same thing. That we would meet at 3:00 o'clock, as we had discussed earlier that morning. We would meet at 3:00 o'clock on the following afternoon *to sign the documents and exchange the checks.*

\* \* \* \* \* \*

"Q. Mr. Healy, is there any doubt in your mind that the parties had reached an agreement on all terms of this agreement by the afternoon of September 10th?

"A. None whatsoever." (Emphasis added.)

Robert Koester, counsel for appellee Sheridan National Bank, testified in part:

"Q. \* \* \* Mr. Koester, I think we were still on the telephone call that you had, among all four counsel; correct?

"A. Yes.

\* \* \* \* \* \*

"Q. Were there any—Well, in fact, during that conversation, did Ms. Reiter say anything respecting the question of whether or not all parties had an agreement?

"A. I don't recall.

"Q. Was there any other discussion among anybody else that would lead you to believe you had an agreement?

"A. I believe everybody agreed there was an agreement at that time."

Mike Davis testified in part:

"Q. So as I understand it, at that point and time, counsel for all four parties participated in the conference call?

"A. That's correct.

"Q. Did you develop any understanding whether at that time the parties had reached an agreement with respect to the litigation?

"A. My understanding was that we had reached an agreement to settle on the terms we have indicated."

Even Darlene Rieter testified in part:

"Q. Ms. Rieter, you testified there was a meeting in your office on the morning of September 10th; do you recall that?

"A. Yes.

"Q. At that time it was the case that Sawmills had extended authority to you to settle with Mr. Morris for twelve thousand dollars?

"A. No, that is not correct. Oh, I am sorry, Mr. Morris?

"Q. Yes.

"A. Yes.

"Q. And you expressed that, did you not?

"A. I am not sure that that was expressed at that meeting. Right at this moment I think perhaps that had been agreed at an earlier time.

"Q. There was no question about that particular sum or your authority from the Sawmills, was there?

"A. I don't believe so.

"Q. And basically you found that the parties wound up two thousand dollars apart, is that correct?

"A. That's correct.

"Q. And you did get the concession of an additional five hundred dollars from your client later that date from Mr. Newman, isn't that correct?

"A. That's correct."

---

**2.** Mike Davis was counsel for appellees McCoys.

**3.** Darlene Reiter was counsel for appellant.

The settlement document intended to be executed at the 3:00 p.m. meeting on September 11, 1987 was introduced into evidence as Exhibit "A" at the hearing. The testimony in favor of appellees was sufficient to support the trial court's determination that the minds of the parties met with reference to the terms of the oral settlement agreement; that these terms were contained in the proposed settlement document; that appellant had accepted the essential terms thereof; and that it formed an enforceable contract.

■ In arguing its fourth issue, appellant contends that the court erred in admitting the settlement document intended to be executed at the 3:00 p.m. meeting on September 11, 1987 as Exhibit "A" on the ground that doing so violated that portion of Rule 11, W.R.C.P., which reads in part:

"If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant."

The following occurred during the testimony of Mike Davis:

"Q. And does Exhibit A reflect the agreement that you testified was reached on September 10th, 1987, sir?

"A. It does, except it does not—I believe it does not reflect that the payment of funds was to take place on September 11th, before close of business.

"MR. RIGGS: Move to admit Exhibit A into evidence, Your Honor.

"THE COURT: It will be received."

Not only was the document offered and received as evidence at trial rather than being filed or presented in the course of forming issues for trial,[4] but there was no objection to its admission presented at the hearing.

"Except for appeals which involve issues of jurisdiction or fundamental rights, we will not ordinarily consider contentions of error unless the trial court has first been apprised thereof and given an opportunity to rule upon the alleged error. *Mat-*

*ter of Parental Rights of PP*, Wyo., 648 P.2d 512 (1982). The trial court is usually apprised of the error by means of objection together with reasons in support of the objection. *Matter of Parental Rights of PP, supra.*" Dennis v. Dennis, Wyo., 675 P.2d 265, 266 (1984). See *Goggins v. Harwood*, Wyo., 704 P.2d 1282 (1985).

In *Goggins v. Harwood*, 704 P.2d at 1291, we said:

"Rule 7.05, W.R.A.P. states the plain error doctrine:

" 'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'

"In order to invoke the plain-error rule, it is necessary to show

" ' * * * (1) that the record reflects clear and unequivocally the fact complained of; (2) that the facts prove a transgression of a clear rule of law; (3) that the error affects a substantial right of the accused; and (4) that the defendant has been materially prejudiced by that violation.' *Westmark v. State*, Wyo., 693 P.2d 220, 224 (1984)."

As noted supra, the facts of this case do not prove a transgression of a clear rule of law. The document was not submitted as a pleading or part of a pleading to formulate issues. It was submitted as evidence of the testimony already offered and received. It contained details of that which, according to the testimony, had previously been agreed to by counsel for all of the parties, including counsel for appellant. A preliminary draft had previously been circulated to such counsel. Exhibit "A" changed the preliminary draft only to more clearly set forth the description of the obligations being released and to include the compromise suggested by appellant's counsel. The document was in the process of being executed when appellant's counsel announced that "we don't have a deal." Considerable testimony was received concerning the exhibit.

---

4. Section III, captioned "Pleadings and Motions," is one of the eleven sections of the Wyoming Rules of Civil Procedure. Rules 7 through 16 are contained therein. Section III sets forth the procedure for the formation of issues for trial.

Its admission was proper to give meaning to, and to support, such testimony.

■ Additionally, appellant was not materially prejudiced by the admission of Exhibit "A" into evidence. The information contained therein was already before the court by virtue of testimony of the witnesses. It was a convenient means for compilation of the terms for settlement agreed upon between the parties. Many of such terms concerned settlement of issues that existed among appellees, separate and apart from issues involving appellant. It is equally difficult to understand appellant's contention that the trial court's order constituted an involuntary dismissal of its action. It is true that there were no grounds for such dismissal under Rule 41(b), W.R. C.P., which reads in pertinent part:

"(2) By the Court.—Upon its own motion the court may dismiss without prejudice any action not prosecuted or brought to trial with due diligence."

But the matter was not dismissed. As stated in the judgment:

"The above-entitled matter having come on before the Court upon the Motion to Compel Judgment of Movants Robert B. Morris, Edith I. Morris, Raymond McCoy, Gerald McCoy and Gary McCoy, d/b/a J & D Wood Products, and Sheridan National Bank, seeking to enforce by Judgment a Settlement Agreement which the Movants contend was made in the above-entitled matter, the same having been regularly scheduled by the Court for November 5, 1987. The Movants appeared by their counsel, Lonabaugh & Riggs, and the resisting party, Wyoming Sawmills, Inc., appeared by its counsel, Burgess & Davis. The Court having heard arguments of counsel, considered all Briefs filed by the parties, and having considered all evidence presented in the above-entitled matter, does find that the Movants and Wyoming Sawmills, Inc. entered into and agreed upon a settlement of the captioned litigation on September 10, 1987, *in the form of* a Settlement Agreement as is marked Exhibit 'A' and received in evidence. The Court does further specifically find that Richard C.

Newman, General Manager of Wyoming Sawmills, Inc. and Stanley W. Stephens, President of Wyoming Sawmills, Inc., authorized counsel for Wyoming Sawmills, Inc. to settle the captioned litigation on the terms and conditions agreed to by all parties and their counsel on September 10, 1987, and *as* incorporated in the Settlement Agreement which is dated September 11, 1987, marked Exhibit 'A' and entered in evidence in this matter. The Court does further find that, a settlement having been agreed upon in the above-entitled matter, *in the form marked* Exhibit 'A' entered in evidence in this matter, that the same should now be enforced as the Judgment of the Court." (Emphasis added.)

The judgment is not a dismissal. It is an enforcement of a valid settlement agreement reached by the parties in this case. It is similar to a judgment for specific performance of any contract. It is " 'in the nature of a judgment by consent,' " as was said in *Kukla v. National Distillers Products Company,* 483 F.2d 619, 621 (6th Cir. 1973). The court there went on to say that such is

"authorized under what has been consistently recognized as the trial court's 'inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case.'

"The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation. To effectuate this policy, the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing." (Citations omitted.) *Id.*

The judgment of the trial court is affirmed.