**IDAHO MIGRANT COUNCIL, INC.,**
Appellant (Defendant),

v.

**James WARILA and June Warila,
husband and wife, Appellees
(Plaintiffs).**

No. 94–64.

Supreme Court of Wyoming.

Feb. 17, 1995.

Mark J. Murphy, Sheridan, for appellant.

William R. Shelledy of Scott, Shelledy & Luhm, P.C., Worland, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

This appeal concerns a disputed lease agreement. A provision in the lease agreement found ambiguous by the district court was construed against appellant, as the drafting party, to reach the conclusion that a breach of the lease had occurred. Damages were awarded to appellees. Appellant argues that the lease agreement is unambiguous and allows appellant to terminate the lease at will. In the alternative, appellant argues that the district court should have enforced an oral settlement agreement reached by the parties' attorneys prior to trial.

We affirm.

## I. ISSUES

Appellant presents the following issues:

1. Did the trial court err by finding that the lease was ambiguous?

2. Did the trial court err in the application of the doctrine of "contra proferentum?"

3. Did the trial court commit reversible error when it refused to enforce the settlement agreement?

## II. FACTS

Appellant, Idaho Migrant Council, Inc. (IMC), entered into a five-year lease agreement with appellees, James and June Warila (the Warilas), in June of 1991. The lease agreement provided that IMC would rent the Warilas' property in Worland, Wyoming, for use as a Migrant Head Start Center. The lease agreement contained a provision allowing IMC, under certain circumstances, to terminate the lease without penalty.

In 1992, IMC notified the Warilas of its intent to terminate the lease. IMC paid rent through the end of September, 1992 and vacated the property. The Warilas sued IMC for breach of contract.

In an attempt to negotiate a settlement, attorneys for both parties reached an oral agreement that the attorneys thought would be acceptable to both of their clients. IMC's attorney prepared a written settlement agreement, based on the oral agreement between himself and the Warilas' attorney, and forwarded it to the Warilas. The Warilas disagreed with the terms and refused to sign the settlement agreement.

IMC moved to have the oral settlement agreement negotiated between the attorneys enforced. The district court found no mutual agreement between the Warilas and IMC to settle or compromise and denied IMC's motion.

A bench trial was held on December 15, 1993. The district court found that the termination provision in the lease agreement was ambiguous. The district court construed the termination provision against IMC, the drafter of the provision, and found that IMC had breached the lease agreement. The district court terminated the lease and awarded the Warilas $21,322.52 for two years' rent, costs for utilities, lawn restoration and attorney's fees. IMC appeals.

## III. DISCUSSION

### STANDARD OF REVIEW

Interpretation of an alleged ambiguity in a lease agreement is a question of law for the reviewing court. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo.1993). The district court's decision not to enforce the alleged settlement agreement is also a question of law that will be reviewed *de novo.* The district court's factual findings, however, will be upheld unless those findings are clearly erroneous or contrary to the great weight of the evidence. *Bowles v. Sunrise Home Center, Inc.,* 847 P.2d 1002, 1004 (Wyo.1993) (*quoting Pancratz Co., Inc. v. Kloefkorn–Ballard Construction/Development,* 720 P.2d 906, 909 (Wyo.1986)).

### LEASE INTERPRETATION

 IMC argues that the district court erred when it found the lease agreement ambiguous. An ambiguous contract contains language that conveys a double meaning. *McNeiley v. Ayres Jewelry Co.,* 855 P.2d 1242, 1244 (Wyo.1993). Disagreement between parties regarding the meaning of a contract does not establish an ambiguity.

*Moncrief v. Louisiana Land and Exploration Co.,* 861 P.2d 516, 524 (Wyo.1993). Whether a contract contains an ambiguity is a question of law for the reviewing court. *Prudential Preferred Properties,* 859 P.2d at 1271.

■ Contract interpretation is the process of ascertaining the meaning of the words used by the parties to express their intent. *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1023 (Wyo.1993). We generally look to the "four corners" of an instrument to determine the intent of the parties. *Id.* at 1024. However, this rule is only applicable where the language clearly and unambiguously expresses the intent of the parties. *Rouse v. Munroe,* 658 P.2d 74, 77 (Wyo. 1983). If the meaning of a provision in a contract is not readily apparent, the court may resort to competent evidence of extraneous circumstances to explain the ambiguity. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994) (*quoting Alexander v. Phillips Oil Co.,* 707 P.2d 1385, 1387 (Wyo.1985)).

■ The dispute between IMC and the Warilas involves the "TERM" provision in the lease agreement:

2. *TERM:* The term of this lease shall be for sixty (60) months commencing on [the] 10th day of June, 1991, and termination on June 9, 1996. However, ***should Lessee's Migrant Head Start Center funding for this site or desired use cease,*** Lessee may terminate his lease without penalty by giving thirty (30) days written notice to Landlord in accordance with paragraph 12 below.

(Emphasis added.)

The provision conveys a double meaning and is, therefore, ambiguous. *McNeiley,* 855 P.2d at 1244; *Busch Development, Inc. v. City of Cheyenne,* 645 P.2d 65, 68 (Wyo. 1982). IMC argues that the disputed language created a lease term of five years terminable at the option of the lessee if IMC no longer desired use of the property or if funding for the Migrant Head Start program ceased. The Warilas argue that the lease is terminated only if funding ceases, and that funding can cease for the site or for its desired use, either of which would allow IMC to terminate. The district court found the term, "desired use," ambiguous. The provision readily lends itself to more than one interpretation. The district court did not, therefore, err in concluding that the term "desired use" was ambiguous.

■ Nor did the district court err in construing the ambiguity against IMC. We have repeatedly held that a contract will be construed most strongly against the party who drafted the contract. *McNeiley,* 855 P.2d at 1244; *Brazelton v. Jackson Drug Co., Inc.,* 796 P.2d 808, 810 (Wyo.1990); *Kelliher v. Herman,* 701 P.2d 1157, 1159 n. 1 (Wyo. 1985). James Warila testified regarding the drafting of the lease agreement. IMC originally drafted the lease agreement with a ten year term. The Warilas rejected that lease agreement and suggested a five year term. The Warilas made no changes to the "desired use" language at issue today.

The district court's finding that IMC drafted the operative language of the contested clause is not clearly erroneous. *Bowles,* 847 P.2d at 1004. The district court construed the language of the lease agreement against IMC and determined that IMC could not terminate the lease at their option. We agree with that determination and hold that the ambiguity in the contract was properly construed against IMC and that the lease could not be terminated at IMC's option.

SETTLEMENT AGREEMENT

■ IMC argues that the Warilas are bound by the oral settlement agreement negotiated by their attorney. We disagree. The question of whether the settlement agreement is binding on the Warilas is controlled by a contract formation analysis. Offer, acceptance and consideration are required to form a contract. *Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 247 (Wyo.1992) (*quoting Miller v. Miller,* 664 P.2d 39, 40 (Wyo.1983)). When these elements are established, courts conclude that there has been a meeting of the minds and an enforceable contract exists. *Anderson Excavating and Wrecking Co. v. Certified Welding Corp.,* 769 P.2d 887, 889 (Wyo.1988). The Warilas never accepted IMC's offer of

settlement, thus, there was no meeting of the minds and no contract. The alleged settlement agreement IMC seeks to enforce represents nothing more than failed negotiations.

When the Warilas' attorney asked James Warila about the settlement agreement he and his wife refused to sign, James Warila testified:

> I read them over briefly. And I was ready to sign them, and as a matter of fact I got up to sign them and my wife said "just a minute", she said "where is the $9000." And so I read the document again and it wasn't there. And I asked your secretary and she said well it must have been an error, it should have been in there. I said, well, we will go ahead and sign it and they can add it. Then we decided not to, so, and now it's this way.

The record demonstrates that the Warilas refused to accept IMC's offer; therefore, there is no contract because there was no meeting of the minds. *See, Lavoie*, 840 P.2d at 248. The district court properly denied IMC's motion to enforce the settlement agreement.

IMC argues in its reply brief that the purpose of the lease agreement was frustrated. Our rules of appellate procedure limit reply briefs to the issues and arguments raised by appellees. W.R.A.P. 7.03. We, therefore, decline to address IMC's frustration of purpose argument.

## IV. CONCLUSION

IMC's Migrant Head Start Center is a commendable program that provides early education for children whose parents' jobs require frequent relocation. IMC's laudable, non-profit motive, however, does not exclude it from the rules of contract law. We agree with the district court's conclusion that the lease agreement entered into by IMC and the Warilas contained an ambiguity. IMC drafted the ambiguous provision. Therefore, the district court properly construed that ambiguity in favor of the Warilas. Our rules of contract law also apply to the contested settlement agreement. When an offer is refused, there is no meeting of the minds and, therefore, no contract to enforce.

Affirmed.

MACY, Justice, specially concurring.

I agree with the result reached by the majority but for a different reason. I believe that the language of the termination clause is unambiguous and that the language did not permit the tenants to terminate the lease.

The phrase "should Lessee's ... desired use cease" which was contained in the lease did not mean "should Lessee's ... desire to use this site cease." The tenants attempted to terminate the lease because they no longer desired to use this site, not because their desired use ceased.