In the Matter of the ESTATE OF Vera Darlene McCORMICK, Deceased.

John D. McCORMICK, Appellant (Plaintiff),

v.

Anita E. McCORMICK, Appellee (Defendant).

No. 96–108.

Supreme Court of Wyoming.

Nov. 6, 1996.

James L. Edwards and Brian C. Shuck of Stevens, Edwards & Hallock, P.C., Gillette, for Appellant (Plaintiff).

Courtney R. Kepler and Thomas F. Reese of Brown, Drew, Massey & Sullivan, Casper, and Keith P. Tyler, Casper, for Appellee (Defendant).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant John McCormick (John) appeals from the order which approved and enforced a settlement agreement between him and Appellee Anita McCormick (Anita).

We affirm.

### ISSUES

John presents two issues in his appeal:

*ISSUE I:* Whether the district court erred in concluding that the parties mutually agreed to enter into a settlement agreement on October 24, 1995?

*ISSUE II:* Whether enforcement of the oral agreement is violative of Wyoming Statutes Section 1–23–105 (Statute of Frauds)?

### FACTS

Vera McCormick died intestate on January 3, 1992, leaving two adult children, John and Anita, as the heirs of her estate. A petition for probate was filed on December 24, 1992, and John and Anita were appointed as the personal representatives for the estate. Unfortunately, John and Anita could not agree on how to settle the estate, and controversies arose over which assets belonged to the estate. As a result of the disagreements between John and Anita, the district court allowed them to resign from being the personal representatives, and it appointed First Interstate Bank, N.A.—Casper (the bank) as the new personal representative.

John and Anita presented various purchase offers to the bank for the estate's property. The bank requested that a hearing be set to consider its petition to sell the property and the purchase offers. The district court held a conference on October 24, 1995, at which time it suggested that John and Anita meet in an attempt to resolve their disagreements. The district court advised the parties that, if they did not reach an agreement during the meeting, they should submit their final proposals for the distribution of the estate assets to the district court by October 27, 1995. Although John and Anita did not believe that they could resolve their differences, they met in a jury room with their respective attorneys at the conclusion of the court conference. During that meeting, the parties discussed the situation and took two breaks during which John and Anita met privately with their attorneys. By the conclusion of the meeting, the parties had reached an understanding. Anita's attorney drafted a written settlement agreement and presented it to John's attorney. Neither party presented a final proposal to the district court by the October 27th deadline.

In a letter dated November 6, 1995, John requested that certain minor modifications be made to the written agreement and indicated that he was evaluating how the agreement would affect his estate tax liability. During this time, the district court and the bank's counsel sent letters to the parties, congratulating them for reaching an agreement. The parties did not respond to the congratulatory letters.

On December 1, 1995, John's attorney advised Anita's attorney that John refused to sign the written settlement agreement because he did not agree with the provision which required him to pay some of the estate taxes on the assets which Anita would receive. Anita filed a motion to enforce the October 24, 1995, oral settlement agreement. The district court held a hearing on Anita's

motion and ruled that the parties had indeed reached an agreement. The district court entered an order which approved and enforced that agreement. John took his appeal from that order.

### DISCUSSION

John argues that the district court erred by ruling that the parties had entered into a settlement agreement at the October 24, 1995, settlement meeting. He also argues that the district court erred by taking Anita's counsel's affidavit into account in reaching its decision.

■ A settlement agreement is a contract, and it is subject to the same legal principles as those which apply to any contract. *Idaho Migrant Council, Inc. v. Warila*, 890 P.2d 39, 41 (Wyo.1995); *Wyoming Board of Certified Public Accountants v. Christensen*, 800 P.2d 853, 856 (Wyo.1990). The basic elements of a contract are offer, acceptance, and consideration. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1272 (Wyo.1993). When these elements have been established, "courts conclude that there has been a meeting of the minds and an enforceable contract exists." *Idaho Migrant Council, Inc.*, 890 P.2d at 41.

■ Whether a contract has been formed depends upon the parties' intent. *Wyoming Sawmills, Inc. v. Morris*, 756 P.2d 774, 775 (Wyo.1988).

"An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as the written contract would be if it had been executed." *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, Wyo., 681 P.2d 1326, 1331 (1984).

"In general, the principle is well settled that where the parties to a contract intend that it shall be closed and consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, the parties will be bound by the contract actually made, although it be not reduced to writing; but, on the other hand, if the parties do not

intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no complete contract until the agreement shall be put into writing and signed." *Summers v. Mutual Life Ins. Co.*, 12 Wyo. 369, 75 P. 937, 943 (1904).

*Wyoming Sawmills, Inc.*, 756 P.2d at 776.

Whether a contract has been formed is a question of fact. *Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 247 (Wyo.1992); *Wyoming Sawmills, Inc.*, 756 P.2d at 775. We, therefore, apply our traditional standard of review to determine whether sufficient evidence supported the district court's factual findings.

[O]n appeal, the Supreme Court assumes that evidence in favor of the successful party is true, leaves out of consideration entirely the conflicting evidence presented by the unsuccessful party, and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence.

*Wyoming Sawmills, Inc.*, 756 P.2d at 775. *See also Vasquez By and Through Vasquez v. Wal–Mart Stores, Inc.*, 913 P.2d 441, 443–44 (Wyo.1996); *Kadrmas v. Valley West Homeowner's Association*, 848 P.2d 826, 828 (Wyo.1993).

■ John argues that, in *Idaho Migrant Council, Inc.*, we changed the standard for reviewing contract formation questions. In that case, we stated:

Interpretation of an alleged ambiguity in a lease agreement is a question of law for the reviewing court. *The district court's decision not to enforce the alleged settlement agreement is also a question of law that will be reviewed de novo.* The district court's factual findings, however, will be upheld unless those findings are clearly erroneous or contrary to the great weight of the evidence.

*Idaho Migrant Council, Inc.*, 890 P.2d at 40 (citations omitted and emphasis added).

John relies on the emphasized portion of the quote in arguing that we must review *de novo* the question of whether the parties entered into a settlement agreement.

Contrary to John's assertion, we did not change the standard for reviewing contract formation questions. In the *Idaho Migrant Council, Inc.* opinion, we clearly stated that we give deference to the district court's findings on questions of fact; i.e., determinations on whether the contract formation elements were established. *Id.* The emphasized language from the *Idaho Migrant Council, Inc.* case correctly confirmed that we review *de novo* the district court's conclusions of law; i.e., determinations on whether the district court correctly applied the *law* of contract formation. *Id.* The language in that case, therefore, merely restated the traditional standard of review.

■ In reaching its decision that the parties had entered into a settlement agreement, the district court found:

1. Both parties were present, with counsel.

2. Both parties attended the meeting with doubts that a settlement could be reached, but also with the intent to reach a settlement agreement, if possible.

3. Both parties presented their separate positions, and then both parties made concessions toward the final agreement.

4. Neither party informed the Court by October 27th, as it had requested, of a proposal for the Court's acceptance of the parties' separate offers to purchase estate property.

5. Neither party responded to the Court's letter of November 2, 1995, in which the parties were congratulated for having reached a settlement.

6. Neither party responded to [the bank's attorney's] letter of November 7, 1995, in which he also congratulated the parties for having reached a settlement.

7. All material issues were discussed and resolved at the meeting, leaving only the memorialization of such agreement in writing.

8. John McCormick's second thoughts after analysis of one term of the agreement—that being the equal sharing of estate taxes—does not negate the "meeting of the minds" that occurred earlier.

9. The detailed nature of the terms of the agreement indicate that it was more than a mere proposal, especially since some of the terms reflect changes requested by John.

10. [John's attorney's] requested minimal refinement of the first draft of the agreement, which resulted in a second draft incorporating his requests, shows that both parties were aware of the terms of the agreement.

Having considered the record in this case, in accordance with our standard of review, we conclude that sufficient evidence supported the district court's specific findings and its ultimate determination that the parties had entered into an oral agreement to settle their differences. The evidence was sufficient to establish that the parties had reached a meeting of the minds at the October 24, 1995, meeting and that they intended to enter into a settlement agreement. The written settlement agreement was simply a memorialization of the oral agreement. The parties' actions subsequent to the meeting, which included accepting congratulations for the settlement and failing to present proposals to the district court by the October 27th deadline, were additional evidence that an agreement had been reached. We do not need to decide whether Anita's attorney's affidavit was admissible evidence because the district court had sufficient other evidence before it to conclude that the parties had entered into an oral settlement agreement.

■ In his second issue, John asserts that the settlement agreement was subject to the requirements of the statute of frauds [1] because the agreement pertained to the transfer of real property interests and it could not be performed within one year. He argues that, under the statute of frauds, the agreement had to be in writing and had to be signed by him to be enforceable. John did not raise this issue before the lower court, and he is, therefore, barred from arguing it

1. Wyo.Stat. § 1–23–105 (1988).

on appeal. *Jim's Water Service, Inc. v. Alinen*, 608 P.2d 667, 670 (Wyo.1980). "[A] party must manifest an objection to avail him/herself of the protection afforded by the Statute of Frauds or else it is waived." *Bereman v. Bereman*, 645 P.2d 1155, 1159 (Wyo.1982). John contends that this Court should apply a plain error analysis to the statute-of-frauds issue since he did not raise the issue below. Our case law does not support applying the plain error doctrine in these circumstances. Instead, when a litigant does not argue in the lower court that,

under the statute of frauds, an agreement is unenforceable, he forever waives his right to argue that issue. *Bereman*, 645 P.2d at 1159; *Jim's Water Service, Inc.*, 608 P.2d at 670.

Affirmed.