2001 WY 103

In the Matter of the ESTATE OF
Michael A. MAYCOCK,
deceased.

Jeffrey C. Maycock and Bradley
A. Maycock, Petitioners,

v.

Deborra Maycock, Personal Representative of the Estate of Michael A. Maycock, Deceased, Respondent.

No. 00–5.

Supreme Court of Wyoming.

Oct. 31, 2001.

Brian N. Beisher of Hart & Beisher, Sheridan, WY, Representing Petitioners. Argument by Mr. Beisher.

Dan B. Riggs and Jonathan A. Botten of Lonabaugh and Riggs, Sheridan, WY for Deborra Maycock; and Thomas E. Lubnau II of Lubnau, Hand & Bailey, LLC, Gillette, WY for the Estate of Michael Maycock, Representing Respondent. Argument by Messrs. Riggs and Lubnau.

Before LEHMAN, C.J., and THOMAS,* GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] Following their father's death, Jeffrey and Bradley Maycock entered into estate settlement negotiations with their mother, Deborra Maycock, who was both an heir to her late husband's estate and the personal representative thereof. Settlement was achieved after several written offers and counter offers. After actions had been taken in reliance upon that settlement, the sons had second thoughts, and the estate's attorney sought the probate court's intervention. Upon hearing, the court ordered performance of the agreement. Jeffrey and Bradley seek review of that order, insisting that the agreement is inchoate and facially violative of the statute of frauds. Finding sufficient writings and holding the policy favoring family settlements to be paramount, we affirm.

## ISSUES

[¶ 2] Jeffrey and Bradley articulate the following issues:

> Is the alleged oral agreement unenforceable because it violates Wyoming Statute § 1–23–105, the Statute of Frauds?
>
> 1. Is the alleged oral agreement unenforceable because there is no writing signed by the party against whom enforcement is sought?
>
> 2. Did the negotiations in this matter result in an oral agreement, or only an agreement to agree?
>
> 3. Does the policy favoring upholding parties' agreements outweigh the legislative mandate of the statute of frauds?
>
> 4. Is there sufficient memorandum to satisfy the statute of frauds?
>
> 5. Has there been sufficient complete or substantial performance to make the application of the statute of frauds inequitable?
>
> 6. Should the Wyoming Supreme Court create a new special exception in this jurisdiction to the statute of frauds?

Deborra's statement of the issue is a bit more succinct:

> Does the statute of frauds, Wyo. Stat. § 1–23–105 (1999) render void the subject settlement agreement reached and substantially performed by both sides during this probate litigation?

## FACTS

[¶ 3] There is no dispute as to any fact material to our review. Michael Maycock died on September 11, 1998, leaving an estate

---

* Concurred prior to retirement.

composed of real property, title to much of which was imbued with mineral interests, and personal effects. Mr. Maycock's last will and testament, after some specific bequests to his wife and sons, divided the residuary of his estate into two shares termed "Share A" and "Share B." Mr. Maycock devised "Share A" to his wife, Deborra. Its size was to be predicated upon a valuation of the federal estate tax exemption. "Share B" was composed of the balance of the estate and was devised to sons, Bradley and Jeffrey, in equal shares. Additionally, the will named Deborra as personal representative of the estate.

[¶ 4]   Deborra Maycock chose, in January of 1999, to exercise her privilege under Wyo. Stat. Ann. § 2–5–101(a)(i) (LexisNexis 2001) to take an elective share against her late husband's will. In April of 1999, Jeffrey and Bradley objected to their mother's decision, as personal representative, to accept a proposed settlement of the estate's claim against their father's former law partners (hereinafter the Daly–Anderson agreement). Thereafter, mother and sons, through counsel, entered into fairly protracted settlement negotiations regarding the distribution of the estate.

[¶ 5]   Negotiations manifested themselves in a writing when Jeffrey and Bradley, in a May 27, 1999 letter to Mrs. Maycock's counsel, offered to renounce all their claims as beneficiaries under the will in exchange for an undivided one-half interest in the estate's mineral interests (¼ each), six named horses, two Rolex watches, their father's coin collection, "the mounted heads," a Colt pistol, $120,000 each, and retention of the firearms then in each son's possession. The letter stated, "[u]pon distribution to my clients of the above described property the balance of the estate, including the entire Edwards Place, would then be set over to [Deborra] as would the estate livestock excluding, of course, any livestock which already belongs to my clients." Although the parties and the probate court have failed to take note of it, special attention should be afforded the fact that Bradley's and Jeffrey's May 27 offer

letter recites the final settlement almost verbatim.

[¶ 6]   Evidently disenchanted with the slow progress of the negotiations, Jeffrey and Bradley petitioned the probate court on July 20, 1999, seeking to remove their mother as personal representative of the estate. Three days later, however, on July 23, 1999, the attorney representing the estate presented a written counteroffer on behalf of Deborra Maycock[1]. That counteroffer would have left the sons without any mineral estate. However, in addition to the individual items previously requested by her sons, Deborra offered to cede a "D–6 Dozer," a dump truck, and $112,500 dollars to each son in consideration for settlement and her payment of all debts of the estate, totaling roughly $220,000.00. Finally, her counteroffer called for Deborra to retain all the other assets of the estate, requesting that her sons withdraw their objections to the Daly–Anderson agreement as well as their motion to remove her as personal representative.

[¶ 7]   On August 4, 1999, the sons' attorney orally rejected Mrs. Maycock's July 23 offer and presented an oral counteroffer to the estate's attorney which called for Jeffrey and Bradley to retain ¼ interest, each, in their late father's mineral estate, sharing with their mother's ½ interest as tenants in common. That final counteroffer, mirroring as it does the sons' first offer, was orally accepted on Mrs. Maycock's behalf. That same day the sons' attorney withdrew their objections to the Daly–Anderson agreement and to Mrs. Maycock's service as personal representative. Mrs. Maycock, as well, took steps to implement the settlement by finalizing the Daly–Anderson agreement and arranging financing for her promise of plenary debt retirement. On August 9, 1999, the estate's attorney drafted and delivered a letter confirming Mrs. Maycock's acceptance of the sons' counteroffer made five days previous.

[¶ 8]   In addition to the terms of Jeffrey's and Bradley's initial offer, the settlement agreement also calls for them to receive their

1.   The record is unclear as to the reason settlement negotiations after May 27, 1999, took place with the estate's attorney rather than with the attorney who represented Mrs. Maycock in her capacity as beneficiary.

father's silver pickup and its debt. Each son would retain ¼ of the estate's mineral interests, and each son would receive his payment of $112,500 no later than ninety days after the date of Deborra's acceptance of the offer. The following day, the attorney representing Jeffrey and Bradley informed the estate's attorney by telephone that his clients would not agree to the terms in the letter and "were backing out of the Settlement Agreement." On September 1, 1999, per her cash payment obligation, Deborra was approved for a loan in the amount of $175,000.

[¶ 9] On September 23, 1999, the district court held a hearing on Deborra's motion to enforce the oral settlement agreement of August 4, 1999, as articulated in counsel's August 9, 1999 letter. Seven days later, the court entered its order with the following findings and conclusions of law: (1) an oral settlement agreement occurred on August 3, 1999;[2] (2) the settlement agreement was not within the statute of frauds, Wyo. Stat. Ann. § 1-23-105; (3) even if the settlement agreement was within the statute of frauds, sufficient writings existed to satisfy the statute; and (4) both parties had substantially performed the oral agreement justifying its removal from the requirements of the statute through equity. On March 3, 2000, the probate court partially distributed the estate according to the terms of the settlement agreement found by the district court. Jeffrey and Bradley filed a timely notice of appeal, which we later converted, *sua sponte,* to a petition for writ of review pursuant to W.R.A.P. 13.

### STANDARD OF REVIEW

[¶ 10] A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract. *Matter of Estate of McCormick,* 926 P.2d 360, 362 (Wyo.1996). Whether a contract has been formed is a question of fact. *Shaw v. Smith,* 964 P.2d 428, 435 (Wyo.1998). When, however, the terms of an oral contract are shown without conflict in the evidence, the interpretation thereof becomes a question of

law for the courts. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 218 (Wyo.1994).

[¶ 11] On appeal, a judge's findings of fact, though not entitled to the great deference afforded a jury's determinations, will not be set aside unless clearly erroneous. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hopper,* at 538 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

[¶ 12] Our standard of review for any conclusion of law is *de novo.* If the lower court's conclusion is in accordance with the law, we affirm it; if it is not, we correct it. *Anderson Highway Signs & Supply, Inc. v. Close,* 6 P.3d 123, 124 (Wyo.2000); *Parker Land & Cattle Co. v. Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993). The determination that a given agreement is within the statute of frauds is a question of law which we review *de novo. Matter of Estate of Jackson,* 892 P.2d 786, 788 (Wyo.1995).

### DISCUSSION

[¶ 13] The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation. To effectuate this policy, the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to a writing. *Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 779 (Wyo.1988) (quoting with approval *Kukla v. Nat'l Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir.1973)); *see also Matter of Estate of McCormick,* 926 P.2d at 362–63. Sitting as a probate court in this matter, the

---

**2.** Though the judge's order finds that the agreement took place on August 3, 1999, the letter evidencing the terms of the agreement prepared by the estate's attorney, the pleadings, and the probate distribution of the estate cite the date of settlement as August 4, 1999.

district court found the parties had orally entered into a settlement agreement regarding the distribution of the estate of the testator, Michael Maycock, and enforced that agreement. Jeffrey and Bradley Maycock do not here dispute the lower court's factual finding of an agreement, nor are they successful in planting any seeds of doubt as to the exact contours of that agreement. The dispute is whether the probate court erred in enforcing the agreement as it is within the statute of frauds, as a transfer of real property interests, and thus void absent a writing signed by them, as the parties to be charged.[3]

### Statute of Frauds

[¶ 14] The statute of frauds, Wyo. Stat. Ann. § 1–23–105 (LexisNexis 2001), provides in pertinent part:

> (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith:
>
> * * *
>
> (v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year.[4]

[¶ 15] This court has held "[t]he contract for the sale of real estate as contemplated by the statute is one for the transfer of property or real estate, for a fixed price in money or its equivalent." *Hovendick v. Ruby*, 10 P.3d 1119, 1123–24 (Wyo.2000) (quoting *Miller v. Stovall*, 717 P.2d 798, 802 (Wyo.1986) *overruled on other grounds*, 811 P.2d 287, 290 (Wyo.1991)); *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo.1976); *Mecum v. Metz*, 30 Wyo. 495, 503, 222 P. 574, 576 (1924). Wyo. Stat. Ann. § 2–7–402 (LexisNexis 2001) provides in relevant part:

> Except as otherwise provided in this code, when a person dies the title to his

property, real and personal, passes to the person to whom it is devised by his last will, or in the absence of such disposition to the persons who succeed to his estate as provided in this code.

We have long held mineral interests of the sort envisioned in the parties' settlement to be interests in real property. *Johnson v. Anderson*, 768 P.2d 18, 23 (Wyo.1989); *Connaghan v. Eighty–Eight Oil Co.*, 750 P.2d 1321, 1324 (Wyo.1988); *McGinnis v. McGinnis*, 391 P.2d 927, 929–30 (Wyo.1964); *Denver Joint Stock Land Bank of Denver v. Dixon*, 57 Wyo. 523, 542–43, 122 P.2d 842, 849 (1942).

[¶ 16] Petitioners are correct in contending that upon the death of Michael Maycock, title to his real property, including mineral interests, passed to the devisees of his will: Deborra, Jeffrey, and Bradley Maycock. Subsequently, through the family settlement agreement of August 4, 1999, as memorialized in counsel's August 9, 1999 letter, the Maycock sons orally agreed to surrender any interest in the real property of the estate, as well as some percentage of their mineral interests,[5] to their mother in exchange for $225,000, payment by her of the estate's debts totaling $220,000, and other assorted property.

[¶ 17] Without more, it appears that the parties' agreement fits the technical definition of a contract falling within Wyo. Stat. Ann. § 1–23–105(a)(v). The appellants are quick to remind us of the great trepidation with which we have long viewed efforts to expand exceptions to the statute of frauds, noting that we have consistently chosen to err, if at all, on the side of restricting rather than enlarging those exceptions. *Crosby v. Strahan's Estate*, 78 Wyo. 302, 314, 324 P.2d 492, 496 (1958). The object of the statute has remained fixed, the "manifest" purpose

---

**3.** This is the same issue deemed waived and thus unanswered in *Matter of Estate of McCormick*, 926 P.2d 360 (Wyo.1996), a case involving the enforcement of an oral estate distribution settlement agreement among an intestate's heirs.

**4.** "In this form, and without change, the Wyoming Statute of Frauds has been a part of Wyoming law since 1871, insofar as the sale of real

estate is concerned." *Wallis v. Bosler*, 70 Wyo. 129, 139, 246 P.2d 771, 774 (1952).

**5.** The original percentage of the sons' mineral interests is undetermined as it was to be based upon the size of their mother's share in the estate: "Share A." Likewise, the precise composition of Mrs. Maycock's elective share of the estate was never determined.

being "to secure the highest and most satisfactory species of evidence" when determining title to property, *inter alia. Nelson v. Boynton,* 44 Mass. (3 Metcalf) 396, 397 (1841) (as cited with approval in *Ivenson v. Caldwell,* 3 Wyo. 465, 467, 27 P. 563, 564 (1891)).

[¶ 18]   Given the near identity of the sons' first written offer and the final settlement agreement, we are obliged to consider whether the requirement of the statute of frauds that a writing be "subscribed by the party to be charged therewith" is satisfied by the subscription of Jeffrey's and Bradley's attorney. Our rule has been that this rule "would be satisfied if the party to be charged were to authorize another in writing to sign. The giving to another parol authority, or an oral ratification, would not be sufficient." *Wallis v. Bosler,* 70 Wyo. 129, 148, 246 P.2d 771, 778 (1952). Though the existence of a signed agreement between the sons and their counsel is likely, the record does not reveal as much. Jeffrey and Bradley did not dispute their agency relation with counsel at trial, however, and do not deny that relationship here. What we can conclude from all of this is that the need for strict adherence to the statute of frauds under the facts of this case is less than compelling.

[¶ 19]   Application of the statute of frauds to the facts of this case having been called into question, we look to the underlying purposes of that legislation. Furthermore, however jealous we may be of inroads upon application of the statute of frauds, we remain mindful that its rote application is not automatic. Enforcement of the statute of frauds subserves significant policy concerns, not unlike enforcement of the policy favoring settlements:

> The statute of frauds was enacted to prevent fraud, not to aid it, and should receive a reasonable interpretation with that end in view. The great majority of courts have always endeavored to keep that principle uppermost in rendering their decisions.

*Mead v. Leo Sheep Co.,* 32 Wyo. 313, 327, 232 P. 511, 515 (1925).

[¶ 20]   Clearly, under the unique and difficult factual situation presented by this case, the policy considerations supporting application of the statute of frauds do not occupy the field to the exclusion of other fairly compelling policy considerations. If strong policy considerations favor enforcement of the statute of frauds and implementation of arm's length settlement agreements, equally venerable precedent urges this court to place our imprimatur upon "family settlements" even where the very "family" in question has been or is in the process of being split asunder by divorce. *Rinehart v. Rinehart,* 52 Wyo. 363, 369, 75 P.2d 390, 391 (1938). Mr. Chief Justice Blume repeatedly observed that equity favors compromises and settlements in probate matters:

> It is said that "equity favors amicable adjustments, and will not disturb them unless its jurisdiction is invoked in favor of one without knowledge at the time, by satisfactory evidence, of deception, fraud or mistake." 5 R.C.L. 879.  No deceit, fraud or mistake is pleaded herein or shown.

*Hill v. Breeden,* 53 Wyo. 125, 142–43, 79 P.2d 482, 488 (1938).

[¶ 21]   The rationale underlying the strong preference of the law for family settlements was aptly explained by the North Carolina Supreme Court nearly eighty years ago:

> Family settlements ... when fairly made, and when they do not prejudice the rights of creditors, are favorites of the law.... They are made in recognition of facts and circumstances known, often, only to those who have lived in the sacred family circle, and which a just family pride would not expose to those who neither understand nor appreciate them. They proceed from a desire on the part of all who participate in them to adjust property rights, not upon strict legal principles, however just, but upon such terms as will prevent possible family dissensions, and will tend to strengthen the ties of family affection. The law ought to, and does, respect such settlements[.]

*Tise v. Hicks,* 191 N.C. 609, 132 S.E. 560, 562 (1926).[6]

---

6.  *See generally* M.L. Cross, Annotation, *Family*   *Settlement of Testator's Estate,* 29 A.L.R.3d 8, 27

[¶ 22]   In balancing the various policy considerations before us, we are aided in no small fashion by the factual determination of the probate court.  Exercising its inherent authority recognized by this court in *Wyoming Sawmills, Inc. v. Morris*, 756 P.2d at 775, and *Matter of Estate of McCormick*, 926 P.2d at 362, the probate court found, as a matter of fact, that the parties had orally entered into a settlement agreement regarding the distribution of the estate of the testator, Michael Maycock, and enforced that agreement.  We cannot begin to find a basis for holding that the probate court's factual findings in this regard are questionable, let alone clearly erroneous.

[¶ 23]   Viewing the contours of the settlement ordered by the probate court, we cannot help but be impressed with what that settlement accomplishes.  The debts of the estate are retired and no creditor has been left unsatisfied.  All parties are left with appreciable liquid assets in addition to reasonable expectations of future returns from the mineral estate which they share as tenants in common.  It is significant to make note of the fact that the disposition of the mineral estate is such that the parties to this appeal, presently so at odds, will need to put aside their differences and cooperate to the end that their shared mineral wealth may be reduced to possession.

[¶ 24]   Perhaps the most singular attribute of the much maligned settlement agreement is its uncanny resemblance to the very first written offer advanced by Jeffrey and Bradley on May 27, 1999.  In a number of particulars, the final settlement is more favorable to the sons, giving over to them a D–6 Caterpillar bulldozer, a dump truck, and their father's late-model pickup (albeit accompanied by Jeffrey's and Bradley's assumption of the remaining debt thereon).  The only downside of the final settlement is that Bradley and Jeffrey will receive cash payments of only $112,500.00 rather than the $120,000.00 they had each requested.  Even in that instance, however, something was added when Deborra guaranteed to make full cash payment to each son within 90 days of the settlement agreement.  The congruence

of the sons' May 27, 1999 offer with the final settlement casts a long shadow over their efforts at disavowal of that settlement.  There is, indeed, a writing signed by the agent of those to be charged which describes the final settlement with only the most minor disparities.  That writing and the settlement agreement leave no doubt that the probate court had before it sufficient 'notes and memoranda' to avoid frontal offense to the statute of frauds:

> The agreement, however, would be void unless there were also shown some sufficient note or memorandum thereof in writing, subscribed by the party to be charged therewith.  It is certainly competent to show by parol testimony the attendant circumstances, in order to inform the court of the position and condition of the contracting parties.

*North Platte Milling & Elevator Co. v. Price*, 4 Wyo. 293, 302, 33 P. 664, 665 (1893) (quoted with approval in *Mead v. Leo Sheep Co.*, 32 Wyo. at 322–23, 232 P. at 513).

[¶ 25]   In light of the initial offer presented by Jeffrey and Bradley, the aforementioned consequences of the settlement agreement, and the actions taken in reliance thereupon, it must be emphasized that the sons do not, because they cannot, affirmatively allege fraud, deception or mistake.

[¶ 26]   The primary objective of probate should be an expeditious adjudication of the rights to the property of the decedent.  *In re Stevenson's Estate*, 445 P.2d 753, 756 (Wyo.1968).  Such a determination should be made "to the end that those entitled to share [in the estate] may have the full benefit of the rights which the law gives them at the earliest moment consonant with due process and orderly procedure."  *In re Mayne's Estate*, 345 P.2d 790, 795 (Wyo. 1959) (quoting 2 Bancroft's Probate Practice, p. 109 (2nd ed.1951)).

[¶ 27]   None should labor under the false belief that this decision carves out a fresh exception to the statute of frauds.  The probate court did not resort to parol evidence in order to fix the terms of the agreement

§ 4 (1970 & Supp.2000).

with certainty, and neither do we. To the minor extent that the final settlement diverges from Bradley's and Jeffrey's initial written offer, we find that the policy considerations favoring family settlements and the swift and certain adjudication in probate matters are, under the unique facts of this case, paramount when juxtaposed with the policy considerations underlying the statute of frauds.

## CONCLUSION

[¶ 28] The probate court's factual determination that the parties have formed an enforceable contract is affirmed, the appellants having failed to carry their burden of demonstrating that said determination was clearly erroneous. The extent to which the statute of frauds applies in this instance is called into serious question by the marked similarity of the final settlement agreement to the first offer of settlement proffered on behalf of the contestants, Jeffrey and Bradley Maycock. In the absence of allegations of fraud, deception or trickery, let alone proof thereof, the desirability of intra-familial settlement, along with the priority given the swift and certain administration of estates, must take priority over questionable adherence to the statute of frauds under the facts of this case. The decision of the probate court is affirmed.