2010 WY 65

**Ronald L. SIMEK, Appellant (Plaintiff),**

v.

**Stacy TATE, Administrator of the Estate of Carol B. Brehm, Deceased, Appellee (Defendant).**

No. S–09–0177.

Supreme Court of Wyoming.

May 24, 2010.

Representing Appellant: Andrea L. Richard of The Richard Law Firm, P.C., Jackson, Wyoming.

Representing Appellee: Larry B. Jones, William L. Simpson, and Chris D. Edwards of Simpson, Kepler & Edwards, LLC the Cody, Wyoming Division of Burg Simpson Eldredge Hersh & Jardine, P.C. Argument by Mr. Jones.

Before VOIGT, C.J., and HILL, KITE, and BURKE, JJ., and CAMPBELL, D.J.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from a district court order enforcing an oral settlement agreement requiring the appellant (Simek) to purchase certain real property from the appellee (the Estate).[1] We conclude that the

---

1. On January 13, 2009, Simek appealed from the district court's Findings of Fact and Conclusions of Law Enforcing Terms of Settlement Agreement, which was filed on December 22, 2008. The Final Order and Judgment Enforcing Settlement Agreement Pursuant to the Findings of Fact and Conclusions of Law Enforcing Terms of Settlement Agreement was not filed until July 8, 2009, after the probate courts of Wyoming and Illinois had approved the settlement agreement.

district court did not err in determining that partial performance by the Estate made the settlement agreement enforceable despite the statute of frauds, and we therefore affirm.

## ISSUES

[¶2] 1. Did the district court err in denying Simek's motion for an additional "live" evidentiary hearing, and holding a telephonic hearing instead?

2. Did the district court err in denying Simek's motion to enforce an earlier settlement agreement?

3. Did the district court err in granting the Estate's motion to enforce the settlement agreement despite the statute of frauds?

## FACTS

[¶3] In 1993, Simek purchased from Carol Brehm (Brehm) certain ranch property located in Park County, Wyoming. Brehm reserved from that sale her residence and the acreage surrounding her residence, but gave Simek the "first right to purchase" the property if she decided to sell it. Brehm died in Illinois in 1994, without having indicated any desire to sell her residence, and, therefore, without Simek's option to purchase having been exercised.

[¶4] On October 19, 1998, Simek filed in Park County a civil action against Michael A. Alexander (Alexander), as executor of Brehm's estate in Illinois. Simek alleged that Brehm had breached the ranch sale contract in certain particulars, and he sought specific performance of the purchase option. Count II of the Complaint was later amended so as also to seek declaratory judgment in regard to the purchase option. On April 20, 2001, the district court dismissed Count II on the ground that the purchase option was specifically conditioned upon Brehm exhibiting her desire to sell the property, and that she had not done so.

[¶5] Litigation between Simek and the Estate continued until, after participating in mediation, they reached a settlement agreement in August of 2003 (the 2003 Agreement), which agreement was reduced to writing and executed by the parties. In addition to settling the contract breach issues, the 2003 Agreement provided for Simek's purchase of Brehm's residential property. The 2003 Agreement was, however, conditioned as follows:

3. ***Approval of Illinois Probate Court.*** The parties understand that approval by the Illinois Court conducting the probate of Carol Brehm's Estate is required for approval of this Settlement Agreement. Mr. Alexander, on behalf of the estate and the Brehm Parties, has agreed that he will advise the Illinois Probate Court of the settlement of these claims and will seek the approval of the Illinois Probate Court of these terms and file all necessary documents and pleadings with the Illinois Probate Court reflecting said approval.

[¶6] On January 28, 2005, Simek filed a Motion to Enforce Settlement Agreement, in which he alleged that he, but not the Estate, had taken all necessary steps to implement the settlement. The Estate responded on February 17, 2005, attaching to its response a copy of an order from the Illinois Probate Court denying the petition for approval of the settlement. The motion not having been heard, Simek refiled it on April 28, 2005, and again on May 2, 2005. On May 26, 2005, the district court set the motion for hearing. In the meantime, Brehm's daughter, Stacy Tate (Tate) obtained appointment as administrator of her mother's estate in Wyoming, and on June 27, 2005, the parties stipulated that she be substituted for Alexander as the defendant in this lawsuit.

[¶7] On July 25 and 26, 2005, Simek and Tate and their Wyoming attorneys met in Cody, Wyoming, for settlement negotiations. Believing settlement had been achieved, Tate's attorney drafted a Settlement Agreement and Release of All Claims (the 2005 Agreement). The scope of the 2005 Agreement was relatively similar to that of the 2003 Agreement, although the purchase price for the Brehm residential property was different. The 2005 Agreement contained a provision requiring its approval by the probate courts in both Wyoming and Illinois, and it also contained the following relevant provisions:

5. REAL PROPERTY IS BEING CONVEYED "AS IS". SIMEK acknowledges that the real property described in Paragraph Two herein is being conveyed "AS IS". SIMEK acknowledges that he is informed that there are multiple problems with said real estate (including, but not limited to the house on the real property), and that he accepts the PROPERTY "AS IS".

6. KEY TO PROPERTY. SIMEK acknowledges that he has received the key to the PROPERTY in order to make plans for renovation of the PROPERTY. SIMEK agrees, however, that he will return the key if the probate courts in Illinois and Wyoming do not approve of the settlement. SIMEK further agrees that he will make absolutely no changes to the PROPERTY until he makes payment for the PROPERTY as outlined in Paragraph Three herein. SIMEK also agrees to keep the PROPERTY locked at all times. SIMEK also acknowledges that the alarm, for which he has received information, is not the property of the ESTATE OF BREHM, and it must be returned to the alarm company at closing.

[¶ 8] Simek received the key to the Brehm residence, and kept it for several months. During that period of time, he accessed the premises and had it appraised, but he neither signed the 2005 Agreement nor indicated that he rejected it. Eventually, his attorney sent the Estate's attorney an offer to purchase the property for a lower price than that stated in the 2005 Agreement. What ensued was a motions duel, with Simek repeatedly asking the district court to enforce the 2003 Agreement and the Estate repeatedly asking the district ·court to enforce the 2005 Agreement.[2] Finally, the case was assigned to a different district judge, who held an additional evidentiary hearing on September 30, 2008.

[¶ 9] The district court issued its Findings of Fact and Conclusions of Law Enforcing Terms of Settlement Agreement on December 19, 2008. In summary form, relevant

findings included the following: (1) the 2003 Agreement required approval of the Illinois Probate Court to be effective, and such approval was denied; (2) Simek's testimony that he obtained the key to the residence under the 2005 Agreement for the purpose of a two-week period in which to inspect the premises was not credible; (3) Simek obtained the key to the residence under the 2005 Agreement for the purpose of planning its remodeling; (4) Simek obtained and kept the key until January 2006, during which period he had complete access to the premises and invited many contractors and an appraiser into the residence; (5) under the 2005 Agreement, Simek offered to purchase the property "as is"; and (6) neither Simek nor his attorney notified Tate that the settlement had been rejected.

[¶ 10] Based upon these and other findings, the district court reached the following relevant conclusions of law: (1) the 2003 Agreement was rendered void when the Illinois Probate Court disapproved it; (2) the parties agreed to settle in 2005, with the terms of the settlement being those set forth in the 2005 Agreement; (3) delivery of the key to the premises to Simek, and his use thereof, constituted such partial performance of the oral 2005 Agreement so as to render it enforceable despite the statute of frauds; and (4) Simek's silence, failure to object to the agreement, and failure to notify the court that settlement had not been reached justified precluding Simek from raising the statute of frauds as a defense and justified affirming the oral 2005 Agreement.

### STATUTE OF FRAUDS

[¶ 11] Wyo. Stat. Ann. § 1–23–105 (LexisNexis 2009) provides in pertinent part as follows:

(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

. . . .

---

2. There was also an extensive e-mail duel between counsel, about which more will be said in our discussion of the third issue.

(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year;

. . . .

## DISCUSSION

### Did the district court err in denying Simek's motion for an additional "live" evidentiary hearing, and holding a telephonic hearing instead?

[¶ 12] A district court enjoys considerable latitude in determining the procedural scheme it will follow in reaching its determinations, and we will not reverse such procedural decisions absent an abuse of discretion. *Meyer v. Hatto,* 2008 WY 153, ¶ 11, 198 P.3d 552, 555 (Wyo.2008). We have said that "[a] court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances . . . . and the ultimate issue is whether the court could reasonably conclude as it did." *Three Way, Inc. v. Burton Enters., Inc.,* 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo.2008) (quoting *Doenz v. Sheridan County Bd. of County Comm'rs,* 949 P.2d 464, 465 (Wyo.1997)) (internal citations omitted).

[¶ 13] In the instant case, the trial judge held an evidentiary hearing on January 6, 2006, on the Estate's motion to enforce the 2005 Agreement. The 122–page transcript of that hearing, containing the testimony of two witnesses and arguments of counsel, is in the record. Because counsel needed time to present additional testimony, the matter was continued for further hearing on January 27, 2006. The 263–page transcript of that day's hearing, containing the testimony of five witnesses and arguments of counsel, is also in the record. The matter was again continued, and a third hearing occurred on February 21, 2006. The 218–page transcript of that hearing, containing the testimony of three witnesses and arguments of counsel is, likewise, in the record. The "final installment" of the trial, as characterized by the trial judge, was scheduled for July 21, 2006, but was continued at the request of Simek's counsel. During that aborted hearing, the assigned judge advised counsel that he had just announced his retirement.

[¶ 14] The case was assigned to a different district judge on October 18, 2006. Court-ordered status reports were filed in December 2006, but no further activity is revealed in the court file until the Estate filed a setting request on April 25, 2008. Simek soon filed his own request for an evidentiary hearing. Simek requested a day and a half for the hearing, in order to "complete the evidence and present updated evidence," and to allow the district court "to assess the credibility of the evidence rather than attempting to do the same from previous stale and incomplete transcripts."

[¶ 15] On September 5, 2008, the district court issued a scheduling order setting a "supplemental evidentiary hearing" for September 30, 2008. The hearing was held as scheduled, with Tate and the Estate's counsel and a witness appearing in person in the courtroom in Torrington, Wyoming, and with Simek and his counsel and a witness appearing telephonically from Jackson, Wyoming. At the outset of the hearing, the following colloquy occurred between the district court and Simek's counsel:

THE COURT: And, [Simek's counsel], are you ready to go?

[SIMEK'S COUNSEL]: Yes, we are, your Honor.

And for the record, we have in Jackson in the conference room in our law firm, Mr. Ron Simek and his wife, Mrs. Simek, Ms. Ky Simek, and myself; and we will be joined later by another witness by telephone; and we are ready to proceed.

THE COURT: Very well.

Well, first of all, let me say, counsel, thank you for your cooperation with me on a schedule here; and for both of the clients, you know, you have a right to have your case in Cody, in Park County. That's the way the system works in Wyoming. And by consent your attorneys have agreed to get this case expedited and going and finished, they have agreed to do it in this matter with [the Estate's counsel] here, and by telephone for Mr. Simek.

. . . .

THE COURT: Very good. If there is a problem, we might have a plan B that we can come up with also.

All right. So folks, I have reviewed several times the four transcripts in this case from the four hearings. The first three of those had evidentiary presentation, and the fourth, really, was just a discussion between counsel and the judge. And where we left things kind of seems to be in flux. There at least was a point in time when I think some of the parties were willing to be satisfied with what evidence they had if they could complete the case then; and then perhaps if there is more that needs to be presented, maybe one or both sides want to present some more.

So, [Simek's counsel], I will ask you to call any additional witnesses you have.

Simek then called two witnesses, and the Estate called one witness. The record contains the 102–page transcript of the hearing.

[¶ 16] We will summarily affirm the district court on this issue for the following reasons: (1) the numerous hearings provided the parties with ample opportunity to present evidence; (2) the record reveals no reason Simek and his attorney and his witness could not have appeared in person at the hearing; (3) the parties consented to the procedure; (4) Simek has shown no prejudice from the procedure; (5) the newly assigned district judge reviewed all of the evidence that had been presented at all the hearings; and (6) the single case cited by Simek on this issue in his appellate brief, *Yaekle v. Andrews,* 169 P.3d 196, 200 (Colo.Ct.App.2007), stands for the proposition that a hearing is required if the terms or existence of a settlement agreement are in dispute, not for the proposition that a telephonic hearing is insufficient under such circumstances.

### *Did the district court err in denying Simek's motion to enforce an earlier settlement agreement?*

[¶ 17] As noted earlier herein, the district court concluded that the 2003 Agreement was rendered void when approval of the Illinois Probate Court, a condition precedent, was not obtained. *See supra* ¶ 10. In his appellate brief, Simek finds fault with the district court in this regard as follows:

The District Court's failure to consider the 2003 Agreement undermines its reliance on the 2005 Agreement. In other words, the terms of the 2003 Agreement are inconsistent with the terms of the 2005 Agreement. The District Court did not reconcile these differences and under this Court's juris prudence [sic] these inconsistencies would limit the ability to create an oral contract as the District Court did in its decision. For example, in *Fowler v. Folwer,* [sic] 933 P.2d 502, 505 (Wyo.1997), the District Court had concluded that there was an oral contract and the Wyoming Supreme Court reversed the findings that the evidence was insufficient to establish the existence of an oral contract between a father and son. What troubled the Court and caused it impart [sic] to conclude that there was not an oral contract was the fact that there were different versions of the essential terms of the contract and that the essential terms were inconsistent and contradicted one another. *Folwer,* [sic] 933 P.2d at 505. The same situation exists here, the parties in 2003 agreed to essential terms including price for the real estate transaction. The Court in this case created a contract and supplied terms that are inconsistent. . . .

[¶ 18] As with the first issue, we will again summarily affirm the district court. The present scenario in no way resembles that in *Fowler,* where this Court concluded that "[t]he lack of certainty in essential contractual terms forces us to determine that an oral contract did not exist." *Fowler v. Fowler,* 933 P.2d 502, 506 (Wyo.1997). In the case now before the Court, two separate settlement agreements were reached-a written settlement agreement in 2003 and an oral settlement agreement in 2005. The fact that some terms of the two agreements are inconsistent with one another is legally meaningless. The 2003 Agreement became void because it was not approved by the Illinois Probate Court. The prior existence of the 2003 Agreement, as well as its terms, has nothing to do with the question of whether the parties reached an oral settlement in 2005, or with the ques-

tion of whether that 2005 Agreement should be enforced.

### Did the district court err in granting the Estate's motion to enforce the settlement agreement despite the statute of frauds?

[¶ 19] In its simplest relevant terms, the statute of frauds requires contracts for the sale of land to be in writing. *See supra* ¶ 11. The question of whether a contract has been formed is a question of fact, and the district court's determination on that question will not be reversed unless clearly erroneous. *In re Estate of Maycock*, 2001 WY 103, ¶¶ 10–11, 33 P.3d 1114, 1117 (Wyo.2001). "A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract." *Id.* at ¶ 10; *see also In re Estate of McCormick*, 926 P.2d 360, 361 (Wyo.1996). We apply the following standard in reviewing whether the district court's determination as to the existence of a settlement agreement was supported by sufficient evidence:

> [O]n appeal, the Supreme Court assumes that evidence in favor of the successful party is true, leaves out of consideration entirely the conflicting evidence presented by the unsuccessful party, and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence.

*McCormick*, 926 P.2d at 362 (quoting *Wyoming Sawmills, Inc. v. Morris*, 756 P.2d 774, 775 (Wyo.1988)).

[¶ 20] The intention of the parties is of particular significance when a court is faced with determining whether a contract existed after the oral communications between the parties, or only after the terms were reduced to writing. Recently, we stated the law in that regard as follows:

> One specific question in determining the parties' intent is whether their contract was meant to be formed only upon the signing of written documents or was meant to be formed upon an oral understanding.

> " 'An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as the written contract would be if it had been executed.' *Robert W. Anderson House[w]recking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, 681 P.2d 1326, 1331 (1984).

> " 'In general, the principle is well settled that where the parties to a contract intend that it shall be closed and consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, the parties will be bound by the contract actually made, although it be not reduced to writing; but, on the other hand, if the parties do not intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no complete contract until the agreement shall be put into writing and signed.' *Summers v. Mutual Life Ins. Co.*, 12 Wyo. 369, 75 P. 937, 943 (1904)."

*Frost Const. Co. v. Lobo, Inc.*, 951 P.2d 390, 394 (Wyo.1998) (*quoting Wyoming Sawmills, Inc. v. Morris*, 756 P.2d 774, 776 (Wyo.1988)).

*Birt v. Wells Fargo Home Mortgage, Inc.*, 2003 WY 102, ¶ 11, 75 P.3d 640, 648 (Wyo. 2003). In an earlier case, we set forth the applicable law in even more detail:

> The law is well stated in *Hageman & Pond, Inc. v. Clark*, [69 Wyo. 154, 238 P.2d 919], 923–924 [ (1951) ]:

> " * * * The courts generally hold that whether or not a contract is to be effective only when reduced to writing and signed by all the parties is mainly a question of intention. In 122 A.L.R. 1248–1250, it is said: 'The fact that parties to negotiations contemplated the drawing and execution of a formal written contract is regarded in numerous cases as evidence that they intended the prior oral or informal agreement, * * * to be merely tentative and not final. Indeed, this circumstance has been considered as "strong evidence" that the

parties did not intend that the negotiations should amount to an agreement prior to the execution of the formal writing. * * * It has been said that if the parties stipulate for a formal written agreement expressive of their intention, there is a strong presumption that no contract is made until the formal instrument is prepared and executed, also that where there is a statute requiring that a contract be reduced to writing there can be no presumption of an intention to consummate the contract in any other form.' [ ... ] "Counsel for defendant contends that the circumstances in this case clearly show that it was the intention of the parties that a written contract was to be drawn and signed by all the parties, and that the case of *Summers v. Mutual Life Insurance Co.*, 12 Wyo. 369, 75 P. 937, 943, 66 L.R.A. 812 [ (1904) ] is decisive on the point here discussed. The decision was by the late Justice Potter. He cites with approval the case of *Mississippi & Dominion Steamship Co. v. Swift*, 86 Me. 248, 29 A. 1063 [ (1894) ], enumerating some of the circumstances in determining as to whether or not an oral contract should be considered as the final contract of the parties, namely, 'such as whether the contract is one usually put in writing, whether there are few or many details, whether the amount involved is large or small, whether it requires a formal writing for a full expression of the covenants and promises, and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations.' Other circumstances may be added in the case at bar, namely that it involves a transfer of an interest in real property which ordinarily under the Statute of Frauds must be in writing and signed by the party sought to be charged; that the contract

was in fact reduced to writing and submitted to the other party; the fact that the written instrument contains a blank space where the defendant was expected to sign his name, [ ... ], and perhaps the fact that he actually refused or neglected to sign it. * * * ".

*Turner v. Floyd C. Reno & Sons, Inc.*, 696 P.2d 76, 78 (Wyo.1985) (some internal citations omitted).

[¶ 21] In the instant case, the district court concluded that the 2005 Agreement existed and that it was saved from the statute of frauds as a result of the doctrine of partial performance. Under that doctrine, an oral agreement for the sale of land that has been partially or wholly performed by one party, to its detriment, may be enforced by that party. *Parkhurst v. Boykin*, 2004 WY 90, ¶ 16, 94 P.3d 450, 458 (Wyo.2004); *McClellan v. Britain*, 826 P.2d 245, 249 (Wyo.1992); *Gaido v. Tysdal*, 68 Wyo. 490, 508, 235 P.2d 741, 747 (1951). Before the doctrine of partial performance may be applied, however, the terms of the oral agreement sought to be enforced must be "a definite and complete agreement between the parties," and "the contract terms must be so certain that the court can require the specific thing agreed upon to be done." *Fowler*, 933 P.2d at 504; *see also Hovendick v. Ruby*, 10 P.3d 1119, 1124 (Wyo.2000). Where the partial performance is alleged to consist of transfer of possession of the premises to the putative purchaser, such possession must be "proved beyond the possibility of findings to the contrary." *Hovendick*, 10 P.3d at 1124. It also must be "referable solely to the contract sought to be enforced, and not such as might have been referable to some other or different contract." *Butler v. McGee*, 373 P.2d 595, 597–98 (Wyo.1962).[3]

[¶ 22] The doctrine of partial performance is a common law equitable doctrine that actually predates the original En-

---

**3.** *Butler v. McGee*, as well as two earlier cases, *Johnson v. Maki*, 45 Wyo. 113, 16 P.2d 46 (1932), and *Mecum v. Metz*, 30 Wyo. 495, 222 P. 574 (1924), although dealing with possession of land as partial performance, are of limited utility in the present case because they concern the factors in regard to possession that a putative *buyer* must prove to take his or her land purchase

contract out of the statute of frauds. For instance, *Mecum* holds that, in addition to proving possession, the buyer must also prove that he or she made improvements upon the land. *Mecum*, 222 P. at 577. That analysis is not appropriate when the transfer of possession is alleged by the putative *seller* of the land. *See also* 73 Am. Jur.2d *Statute of Frauds* § 339 (2001).

glish statute of frauds. 73 Am.Jur.2d *Statute of Frauds* § 312 (2001).

> This common law exception to the statute of frauds is a version of equitable estoppel. It prevents a party to a contract from perpetrating a fraud or injustice on the other party when the latter has fully performed under the terms of the oral contract.

*Wyoming Realty Co. v. Cook*, 872 P.2d 551, 554 (Wyo.1994). Given the legislative policy evidenced by the statute of frauds, partial performance should take an oral contract out from its reach only when necessary to avoid a fraud, and to accomplish justice. *Remilong v. Crolla*, 576 P.2d 461, 465 (Wyo.1978); *see also Crosby v. Strahan's Estate*, 78 Wyo. 302, 320, 324 P.2d 492, 499 (1958). The statute of frauds must be applied within the context of competing policies:

> Application of the statute of frauds to the facts of this case having been called into question, we look to the underlying purposes of that legislation. Furthermore, however jealous we may be of inroads upon application of the statute of frauds, we remain mindful that its rote application is not automatic. Enforcement of the statute of frauds subserves significant policy concerns, not unlike enforcement of the policy favoring settlements:
>
>> The statute of frauds was enacted to prevent fraud, not to aid it, and should receive a reasonable interpretation with that end in view. The great majority of courts have always endeavored to keep that principle uppermost in rendering their decisions.
>>
>> *Mead v. Leo Sheep Co.*, 32 Wyo. 313, 327, 232 P. 511, 515 (1925).

*Maycock*, 2001 WY 103, ¶ 19, 33 P.3d at 1119. It is helpful to remember that the doctrine of partial performance is not an evidentiary proposition; rather, it is an equitable theory based upon estoppel:

> The doctrine of part performance operates not upon the theory that the part performance is a substitute for the written evidence required by the statute of frauds, but rather on the theory that the defendant may be estopped in view of the part performance to assert the statute as a defense. Thus, part performance takes the case out of the statute not because it furnishes proof of the contract or because it makes the contract any stronger but because it would be intolerable in equity for the defendant knowingly to allow the plaintiff to invest time, labor, and money upon the faith of a contract that did not exist.
>
> The doctrine of part performance accomplishes its purpose of preventing fraud on the theory of estoppel by conduct to assert the statute.

73 Am.Jur.2d *Statute of Frauds* § 314 (2001).

 [¶ 23] The injury or loss that supports application of the equitable doctrine of partial performance is not the injury or loss caused simply by the failure of one party to perform the contract. *Crosby*, 78 Wyo. at 320, 324 P.2d at 499. "If the mere failure to perform an oral contract were sufficient to remove it from the reach of the statute of frauds, the statute would be rendered vain and nugatory." *Davis v. Davis*, 855 P.2d 342, 346 (Wyo.1993). Rather, the injury or loss

> must arise from the acts done in performance or in pursuance of the oral agreement, and such acts must so far alter the situation of the parties seeking to avoid the statute that it would be unjust and against conscience to allow the other party, who has permitted such change to take place in pursuance of his oral agreement, to thereafter refuse to perform on his part.

*Crosby*, 78 Wyo. at 320, 324 P.2d at 499; *see also Allen v. Allen*, 550 P.2d 1137, 1143 (Wyo.1976). The court looks to several factors in determining whether equity should defeat the statute of frauds, including the following: (1) the relations of the parties; (2) the nature of the parol agreement; and (3) the relative benefit and detriment derived by the parties. *Empfield v. Kimbrough*, 900 P.2d 1153, 1155 (Wyo.1995); *Davis*, 855 P.2d at 346–47. Part performance must be substantial. *Id.* at 346. On the other hand, the party relying upon partial performance must show only a material detriment, as opposed to irreparable injury. 73 Am.Jur.2d *Statute of Frauds* § 314 (2001). "The sufficiency of

particular acts as a part performance is for the court to decide as a matter of law." 73 Am.Jur.2d *Statute of Frauds* § 319 (2001); *see also Maycock*, 2001 WY 103, ¶ 12, 33 P.3d at 1117, and *In re Estate of Jackson*, 892 P.2d 786, 788 (Wyo.1995).

[¶ 24] In the instant case, the district court concluded first that, as a matter of fact, a contract was formed—settlement was reached—during the negotiations on July 25–26, 2005. Second, the court concluded that the parties intended for their agreement to be effective upon its oral consummation. Several facts informed these conclusions: (1) the Estate offered possession of the premises before the agreement was reduced to writing and allowed Simek to disarm the house's security system; (2) Simek accepted and took possession of the premises before the agreement was reduced to writing; (3) Simek retained possession of the premises for several months despite not having executed the written agreement; (4) Simek utilized his possession of the premises to bring in contractors for remodeling assessments, which was in furtherance of the oral agreement; (5) neither Simek nor his attorney notified the Estate or its attorney that settlement had not been reached; and (6) after the 2005 Agreement was reached, Simek's attorney informed the Estate's attorney that Simek had filed another motion to enforce the 2003 Agreement, not because the 2005 Agreement did not exist, but to protect Simek's rights in case the 2005 Agreement did not receive court approval.

[¶ 25] As mentioned above, the two attorneys engaged in repeated e-mail and telephone contacts as the Estate's attorney attempted to determine why Simek was not signing and returning the agreement that had been reduced to writing. The district court set out these contacts at length in its findings of fact, and then relied upon them in concluding that Simek's failure to deny existence of the 2005 Agreement was a factor in estopping him from asserting the statute of frauds as a defense. The Estate's attorney testified that, in one particular telephone call, Simek's attorney told her the following in regard to Simek's renewal of his motion to enforce the 2003 Agreement:

Well, we've been through this rodeo before. We had tried to—we have settled before, and the 2003 agreement was not approved. And so *in case the 2005 agreement also was not approved,* she wanted to make sure she preserved her rights under the 2003 agreement.

(Emphasis added.) The emphasized language reveals that Simek's position was not that the 2005 Agreement had not been reached; rather, his position was that he wanted to try to fall back upon the 2003 Agreement if the courts did not approve the 2005 Agreement.

[¶ 26] This case boils down to a question of law—whether the Estate's acts in partial performance of the 2005 Agreement were sufficient to estop Simek from asserting the statute of frauds as a defense, especially when coupled with Simek's failure to disclaim the agreement in the face of that conduct. We conclude that the district court did not err in answering that question in the affirmative. The Estate acted to its detriment in reliance upon the agreement by relinquishing possession of the Brehm residential property to Simek for several months, by allowing him repeated access to the residence for remodeling assessments, by allowing him to disarm the security system to obtain entry, and by informing the district court that the civil action had been settled. As noted above in the citations to *Empfield*, 900 P.2d at 1155, and *Davis*, 855 P.2d at 346–47, *see supra* ¶ 23, the court looks to the specific factors of a particular case in determining whether equity should defeat the statute of frauds. In that regard, this dispute had been going on since Simek filed the civil action in 1998—for seven years. Brehm died in 1994, yet probates remained open eleven years later in two states because of the delay in resolving this controversy. The 2005 Agreement settled not just the Brehm residence purchase, but also Simek's separate claims against the Brehm estate based on the ranch purchase.

[¶ 27] The Estate seeks an equitable escape from the effects of the statute of frauds. We have said in many contexts that the function of equity is to provide fairness and justice to the parties under the circumstances. *See, e.g., Bentley v. Dir. of Office of*

*State Lands & Invs.*, 2007 WY 94, ¶ 32, 160 P.3d 1109, 1118 (Wyo.2007) (equitable conversion); *Countrywide Home Loans, Inc. v. First Nat'l Bank of Steamboat Springs, N.A.*, 2006 WY 132, ¶ 23, 144 P.3d 1224, 1231 (Wyo.2006) (equitable subrogation); *Garlach v. Tuttle*, 705 P.2d 828, 829 (Wyo.1985) (equitable estoppel); *United States Through Farmers Home Admin. v. Redland*, 695 P.2d 1031, 1040 (Wyo.1985) (equitable lien); *Fuller v. Fuller*, 606 P.2d 306, 309 (Wyo.1980) (constructive trust); *Cady v. Slingerland*, 514 P.2d 1147, 1149 (Wyo.1973) (contract rescission); and *Wantulok v. Wantulok*, 67 Wyo. 22, 41, 214 P.2d 477, 484 (1950) (clean hands doctrine). We cannot say in the present case that the district court erred as a matter of law in determining that the acts of partial performance by the Estate, under the circumstances presented, were sufficient to invoke equity to enforce the oral agreement. If we consider the factors mentioned in *Empfield* and *Davis*, to do other than what the district court did in this case would be to return these parties to a seemingly never-ending dispute, to neither's benefit and to both's detriment, despite a clear parol agreement that resolved all of their differences.

## CONCLUSION

[¶ 28] The district court did not err in holding the final evidentiary hearing in this matter, at which hearing one party and its witnesses appeared in person and the other party and its witnesses appeared by telephone. The district court also did not err in denying Simek's motion to enforce the 2003 Agreement, which agreement was void due to its rejection by the Illinois Probate Court. Finally, the district court did not err in enforcing the parties' oral 2005 Agreement, inasmuch as the equitable doctrine of partial performance took the agreement out from the statute of frauds.

[¶ 29] Affirmed.